Robert Richey **PFEIFER, Plaintiff,**

v.

**LEVER BROTHERS COMPANY, Defendant.**

**Civ. No. H–86–377.**

United States District Court, D. Maryland.

July 7, 1987.

Charles Lee Nutt, Clements & Nutt, Baltimore, Md., for plaintiff.

Russell H. Gardner, Whiteford, Taylor & Preston, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Chief Judge.

Presently before the Court in this civil action is defendant's motion for summary judgment. Various other motions are also pending, but as a result of the Court's ruling herein, it is not necessary to address any of these other matters.[1]

In this case, Robert Richey Pfeifer (hereinafter "Pfeifer"), plaintiff, has brought suit against defendant Lever Brothers Company (hereinafter "Lever Bros."), alleging that Lever Bros. terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* At the time of his termination, Pfeifer was 50 years of age, and he held the position of plant engineering manager at defendant's Baltimore plant. While plaintiff has withdrawn his claim for reinstatement, he seeks an award of back pay, front pay, attorneys' fees, and other relief under the ADEA and the Fair Labor Standards Act.

Both parties have submitted voluminous memoranda with attached exhibits in support of and in opposition to defendant's motion for summary judgment. In addition, the parties have taken two lengthy depositions, the transcripts of which have been filed herein and reviewed by the Court. Both sides have clearly availed

---

1. Also pending are defendant's motion to reject opposition of plaintiff to motion of defendant for summary judgment (Paper No. 17), defendant's motion to strike (Paper No. 19), plaintiff's motion to compel answers to second request for the production of documents (Paper No. 21) and plaintiff's motion to lift stay of proceedings (Paper No. 27). All of these motions have been rendered moot by the Court's ruling herein on defendant's motion for summary judgment.

themselves of the opportunity to conduct ample discovery.[2]

After a review of the ample record here, this Court has concluded that no hearing is necessary for a decision on this motion. *See* Local Rule 6. For the reasons to be stated herein, defendant's motion for summary judgment will be granted.

## I

### *Facts*

The facts relevant to the motion before the Court are as follows. Plaintiff was hired by Lever Bros. in 1977 for the position of plant engineering manager at its Baltimore plant, which is devoted to the manufacture of soap and detergent. At or about the time of plaintiff's termination, the Baltimore plant was organized in eight separate departments, the manager of each of which (including plaintiff) reported directly to the overall plant manager. The function of the plant engineering department was to procure and maintain the machinery and equipment used in the plant's production processes in the most efficient and economical manner. The engineering department was also responsible for the plant's utilities and sanitation, and for the lion's share of facilities maintenance.

As manager of the engineering department, Pfeifer oversaw its operations and was responsible for efforts undertaken to ensure compliance with applicable environmental regulations. Indicative of the scope of Pfeifer's duties is the fact that at the time of his termination the engineering department was staffed by approximately 160 individuals, including 30 salaried or managerial employees, of whom 11 were engineers. The budget for Pfeifer's department in 1983 exceeded $12.3 million. Plaintiff in addition oversaw a supplemental $7 million budget for major capital projects initiated by Lever Bros.' corporate headquarters. At the time of his termination,

Pfeifer received an annual salary of $51,700, which was larger than the salary of any other department manager at the Baltimore plant.

For several years prior to plaintiff's discharge, Lever Bros. had been dissatisfied with the operating results of its Baltimore plant. For example, in 1983 the plant operated at a deficit of $2.8 million. As a result of these severe losses, Lever Bros. in mid-November of 1983 asked for and received the resignation of the overall plant manager, Robert Farmer (hereinafter "Farmer"). Farmer had worked for Lever Bros. since 1977, had hired Pfeifer and had been plaintiff's immediate supervisor for the entire time of Pfeifer's employment at Lever Bros. Plaintiff was very loyal to Farmer and had been comfortable with Farmer's relaxed management style, which mirrored his own.

Upon Farmer's forced resignation, James Vaka (hereinafter "Vaka"), assumed the duties of plant manager. Vaka was 46 years old at this time, and he had been employed at Lever Bros. for over 25 years. As became immediately apparent, Vaka's approach to management differed drastically from Farmer's. Unlike Farmer, Vaka was not interested in the minutia of his subordinates' jobs. Instead, Vaka's focus was on the bottom line, to the near exclusion of almost everything else. At his deposition, Pfeifer candidly admitted that Vaka's assumption of the position of plant manager required "some major adjustments on the part of a lot of people," and that he personally found it difficult to keep up with Vaka's expectations.

From the very start of Vaka's tenure, Pfeifer's deficiencies as a manager were recognized and documented. On a Saturday preceding the official assumption of his duties in November of 1983, Vaka toured the plant with plaintiff and other department heads. Vaka expressed extreme dissatisfaction with the damaged and dilap-

---

**2.** Were it necessary to do so, this Court would deny plaintiff's motion to compel answers to his second request for the production of documents. (Paper No. 21). At the conference held with counsel on September 25, 1986, the Court permitted certain limited discovery which was beyond the cut-off date set by the Scheduling Order. The further information sought by plaintiff's motion to compel is beyond the limited scope of additional discovery permitted by the Court.

idated condition of certain facilities and equipment which were subject to plaintiff's control. Numerous safety hazards, including exposed asbestos and hundreds of open electrical conduits, were pointed out. Vaka in addition noted large quantities of unused scrapped equipment discarded in an open-air junkyard, on the roofs of buildings, and in various other locations throughout the plant. These piles of junked equipment indicated to Vaka that Pfeifer was both inattentive to simple maintenance and unwise in his selection of equipment.

Following assumption by Vaka of his official duties as plant manager, further deficiencies in plaintiff's job performance came to Vaka's attention. In late 1983, Vaka asked Pfeifer to prepare a status report of engineering projects budgeted at $50,000 or more. Pfeifer's report indicated ten or more major engineering projects that were overspent, incomplete or behind schedule. It also come to Vaka's attention that the engineering department had failed on numerous occasions to obtain proper authorization for its purchases. Vaka further noted that plaintiff's department had exercised inadequate supervision over outside contractors. On several occasions, Vaka verbally warned Pfeifer concerning these deficiencies, and in a written memorandum dated December 22, 1983, Vaka explicitly advised Pfeifer that he was responsible for the performance of his department and that plaintiff's continued unsatisfactory performance would not be tolerated in 1984.

The new year, however, did not bring about any substantial improvement in Pfeifer's performance. In a memorandum dated November 19, 1983, Vaka had directed Pfeifer to prepare a snow removal plan for the Baltimore plant. Pfeifer's "plan" did not work when the first snowfall occurred, and failed even more drastically during a second and more severe snowfall in early 1984. On January 23, 1984, Pfeifer submitted his year end summary of his 1983 department goals. This report glossed over or ignored the deficiencies which Vaka had noted in the engineering

department's performance. In a conference held on January 24, 1984, Vaka criticized plaintiff both for his inadequate and factually incorrect report and for his continued substandard managerial performance.

Also on January 24, Vaka issued a written memorandum confirming and documenting his criticisms of Pfeifer's report and performance. In this memorandum, Vaka specifically noted one poorly engineered project which was incomplete and which almost certainly would exceed its budget, remarking:

> This is another example of poor management by you and your staff and it is obvious that no one checks the numbers, both dollars and engineering calculations. I must hold you accountable as manager of this fiasco. As I have stated to you on several occasions, this type of performance is not acceptable and will not be tolerated.

Vaka also observed that "[t]here is obviously a lack of control by you and your staff in the maintenance area, as well as the general engineering area," and Vaka specifically advised Pfeifer's that his performance had not improved appreciably despite the multiple warnings he had already received.

Vaka's estimation of plaintiff's managerial abilities reached its nadir on February 1, 1984 when Pfeifer submitted six change orders for work done by outside contractors which had been completed weeks before without prior authorization and budget approval. Under company policy, change orders were required to be submitted well before the contractor's work commenced. This incident, along with several others,[3] led to Vaka's decision to terminate Pfeifer's employment on February 7, 1984.

Vaka selected Thomas Dougherty (hereinafter "Dougherty") as the new manger of the engineering department. Dougherty was 33 years of age at the time and had five years of increasingly responsible experience in engineering management with Lever Bros. Vaka was favorably im-

---

**3.** Only some of the relevant incidents relied upon by defendant have been recounted herein.

pressed with Dougherty's skills as a result of their having worked together previously at the Lever Bros. plant in Hammond, Indiana. Dougherty was holding a managerial position at Lever Bros.' corporate offices in New York when Vaka requested his transfer to the Baltimore plant. Dougherty's starting salary as plant engineering manager of the Baltimore plant was higher than Pfiefer's final and highest salary in that same position.

## II

### Summary Judgment Principles

In its motion for summary judgment, defendant asserts that plaintiff cannot prevail on this record on the claim he has here asserted under the ADEA. It is well settled that a defendant moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). This burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.*

One of the purposes of Rule 56 is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). Moreover, "a mere scintilla of evidence is not enough to create a fact issue, there must be evidence on which a jury might rely." *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967) quoted in *Barwick v. Celotex Corp., supra*, at 958–59. In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. As Judge Winter said in *Bland v. Norfolk and Southern Railroad Company*, 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, *i.e.*, any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

In two recent cases, the Supreme Court has had an opportunity to clarify and expand the principles applicable to a trial court's consideration of a summary judgment motion filed under Rule 56. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Anderson*, the Supreme Court held that the standard for granting a summary judgment motion under Rule 56 is the same as that for granting a directed verdict under Rule 50, F.R.Civ.P. 106 S.Ct. at 2511–12. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 2512 (emphasis added).

In *Catrett*, the Court held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 106 S.Ct. at 2553 (emphasis in original). In reaching this result, the Court observed:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule.Civ.P. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).... Rule 56 must be construed

with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 2555.

Very recently, the Fourth Circuit reviewed the Supreme Court's holdings in *Anderson* and *Catrett. Felty v. Graves–Humphrey Co.,* 818 F.2d 1126 (4th Cir. 1987). In that case, Judge Wilkinson emphasized that trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." At 1128 (citing *Celotex, supra,* 106 S.Ct. at 2553).

Applying these principles to the facts of record here, this Court concludes that defendant's motion for summary judgment must be granted.

## III

### *Discussion*

■ In order to make out a *prima facie* case of age discrimination resulting from his discharge, plaintiff must establish: (1) that he is in the protected age group; (2) that he was discharged; (3) that at the time of discharge or demotion, plaintiff was performing his job at a level that met his employer's legitimate expectations; and (4) that following his discharge, he was replaced by some one of comparable qualifications outside the protected class. *EEOC v. Western Electric Co.,* 713 F.2d 1011, 1014 (4th Cir.1983).

■ If plaintiff successfully establishes a *prima facie* case, he creates a rebuttable presumption that the employer unlawfully discriminated against him, and the burden of producing evidence on the issue shifts to defendant. Defendant must then rebut the presumption by coming forth with evidence showing that plaintiff was discharged for a legitimate nondiscriminatory reason. "The employer is not required to prove absence of discriminatory

motive, but merely articulate some legitimate reason for its action." *Id.* at 1014. If the defendant meets this burden, the presumption in favor of plaintiff is destroyed. At the third stage of a claim asserted under the ADEA, the plaintiff then has the burden of demonstrating that the proffered reasons for his discharge were pretextual or untrue. *Id.; see also Lovelace v. Sherwin–Williams Company,* 681 F.2d 230, 240–41 (4th Cir.1982).

Although a court must take particular care in resolving an ADEA suit pursuant to a motion for summary judgment, disposition of an ADEA suit under Rule 56 is appropriate if as a matter of law the plaintiff cannot prevail. As the Court stated in *Douglas v. Anderson,* 656 F.2d 528 (9th Cir.1981):

> We recognize that summary procedures should be used judiciously, particularly in cases involving issues of motivation or intent.... On the other hand, we agree with the Seventh Circuit that one purpose of the allocation of burdens of proof and production in Title VII and ADEA actions is to help district courts to identify meritless suits and to stop them short of full trial.

*Id.* at 535 (citation omitted); *see also, Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1219–20 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

On the record here, this Court concludes as a matter of law that plaintiff has failed to establish a *prima facie* case of age discrimination because, at the time of his discharge, he was not performing his job at a level which met defendant's legitimate expectations. Furthermore, this Court concludes that, even assuming, *arguendo,* that plaintiff has made out a *prima facie* case, defendant has in turn articulated a legitimate nondiscriminatory reason for the termination of plaintiff's employment. Finally, any inference of pretext has been rebutted by the undisputed material facts of record here.

In an attempt to show that his job performance was in fact satisfactory, plaintiff has proffered several annual evaluations of

his work written by Farmer, who as noted was Vaka's predecessor. But Farmer himself was forced to resign because of his unsatisfactory performance as the overall manager of the Baltimore plant. Little weight can be accorded Farmer's opinions concerning plaintiff's performance since Farmer himself had not been satisfactorily discharging his own responsibilities, including the supervision of plaintiff. Moreover, even Farmer's evaluations of Pfeifer are on the whole qualified. The overall rating assigned on all three forms submitted was not "outstanding" nor even "very good" but merely "good," which was the middle of the five possible ranks. Furthermore, Farmer's evaluations of plaintiff allude to the same type of deficiency in performance that Vaka was ultimately to find unacceptable. In fact, in the 1982 evaluation, Farmer expressly remarked: "The greatest difficulty is that [Pfeifer's] managerial style is low-key, non-urgent and easy which is not as effective at this time as it will be when all his departments are running as they should have been in a company with a well-managed history."

Plaintiff's attempted reliance on these evaluations misses the mark in a larger sense. Even if plaintiff's performance under Farmer were considered by the latter to be satisfactory, it does not necessarily follow that plaintiff's performance was satisfactory under Vaka. On this record, it is undisputed that the Baltimore plant was in poor fiscal and physical shape when Vaka assumed the position of plant manager and that Vaka was brought in for the specific purpose of correcting these deficiencies. Understandably, Vaka instituted wide-ranging changes in the plant's operating procedures, one of which was to assign to individual department managers specific responsibility for the performance of their departments. It is clear from both the Pfeifer and Vaka depositions, that Vaka was not particularly interested in the details of his subordinates' tasks. Instead, Vaka placed primary and continued emphasis on the bottom line. Such an emphasis

or approach to management is hardly unreasonable.

Plaintiff, however, had great difficulty in understanding or appreciating what was expected of him under the new regime. In his memoranda to Vaka in the months preceding his termination, plaintiff attempted to shift the blame for various problems in the engineering department to individuals whom he supervised. Plaintiff failed (and continues to fail) to understand that as manager of the department, it was his responsibility to supervise those under him and that he was ultimately responsible for their conduct.

In violation of Local Rule 22A, plaintiff's memorandum in opposition to the pending motion for summary judgment was 73 pages in length.[4] Most of plaintiff's memorandum undertakes to shift to others the blame for the well-documented poor performance of the engineering department and attempts to criticize Vaka's judgment in achieving managerial reform. The essence of plaintiff's claim is that defendant treated him unfairly by not allowing him sufficient time to adapt to Vaka's management style.

This type of claim is not cognizable under the ADEA. The ADEA is "not intended as a vehicle for judicial review of business decisions." *Kephart, supra,* 630 F.2d at 1223; *see also Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979). Nor does the ADEA allow a court to "sit as a super-personnel department." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert denied,* —— U.S. ——, 107 S.Ct. 953, 93 L.Ed.2d 1002 (1987). Under the ADEA, a plaintiff must produce evidence to establish that his employer's motivation for the adverse action taken against him was the plaintiff's age. *Lovelace, supra,* 681 F.2d at 239.

Both *Kephart* and *Dale, supra,* have particular relevance here because they both illustrate the fluidity of the qualification requirement, or, specifically, how a once-qualified employee can become unqualified due to a changing business environment.

---

**4.** In response to defendant's motion to strike, plaintiff later resubmitted this same document retyped in a single-spaced format, amounting to only 43 pages in length.

This case presents quite clearly the latter situation. In *Kephart,* the Court, in a *per curiam* affirmance of a grant of summary judgment in favor of defendant, remarked:

Qualification obviously depends on the nature of [defendant's] business at any given time. One year an outgoing business-getter type might be best qualified while in the next, after the business was got, it might be a cloistered scientist or mathematician. To ignore the shifting nature of qualification from time to time would make the qualification requirement meaningless....

630 F.2d at 1219. Similarly, in *Dale,* defendant terminated a managerial employee who had been with the company for 26 years, but who failed to adapt to the performance expectations of a new superior. Holding that plaintiff had not made out a *prima facie* case on the qualification element, the Seventh Circuit affirmed the district court's grant of summary judgment in favor of defendant. 797 F.2d at 462–65.

■ In this case, it is clear as a matter of law that defendant repeatedly brought to Pfeifer's attention before he was discharged his deficiencies in performing his job. It is likewise clear that Pfeifer did not heed his superior's warnings and repeatedly failed to properly supervise his department. Defendant's expectations for the performance by Pfeifer of his managerial responsibilities were both legitimate and reasonable. On this record, plaintiff has failed to make out a *prima facie* case, since he was not performing his job satisfactorily at the time of his termination.

■ Even assuming, *arguendo,* that plaintiff had made out a *prima facie* case on the present record, summary judgment in favor of defendant would still be granted. The record is replete with specific indications that Lever Bros. was dissatisfied with Pfeifer's job performance and that defendant terminated Pfeifer for this reason. Defendant has thus articulated a neutral, nondiscriminatory reason for Pfeifer's termination. Plaintiff thus bears the burden of showing that defendant's stated reason is pretextual. *See Dale, supra,* 797 F.2d at 463–64. To establish pretext, a plaintiff must prove that the defendant's explanation is unworthy of credence or that it is more likely that a discriminatory reason motivated the employer's actions. *Id.* at 464.

On this record, plaintiff has failed to raise a triable issue as to pretext. In support of his argument that defendant's explanation is pretextual, plaintiff has done no more than rely on his own opinions and on Farmer's evaluations. As previously discussed, Farmer's evaluations do not support plaintiff's contention that his performance under Vaka was satisfactory. As to Pfeifer's own views, this portion of his rebuttal consists entirely of Pfeifer's own lengthy assertions (1) that his performance was entirely adequate and that his subordinates were to blame for the engineering disasters cited by defendant, and (2) that various decisions made by Vaka upon becoming plant manager did not comport with "prudent management."

Although on the present record this Court might well question Pfeifer's suitability to render an opinion on the subject of "prudent management," this Court need not resolve this issue in this way. The Seventh Circuit considered and rejected a similar proffer in *Dale, supra,* noting:

The question is not whether [defendant] exercised prudent business judgment, ... but whether [plaintiff] has come forward to refute the articulated, legitimate reasons for his discharge. In this regard, [plaintiff] must do more than challenge the judgment of his superiors through his own self-interested assertions.

797 F.2d at 464 (citations omitted); *see also Loeb, supra,* 600 F.2d at 1012 n. 6 ("An employer is entitled to make his own policy and business judgments, and may, for example, fire an adequate employee if his reason is to hire one who will be even better as long as this is not a pretext for discrimination."). Moreover, the Fourth Circuit has remarked that the self-perception of a plaintiff in an ADEA suit is irrelevant, that what matters is "the perception of the decision-maker." *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980) (Haynsworth,

J.). For the reasons stated in these cases, plaintiff Pfeifer has not in this case made a sufficient showing to refute the articulated, legitimate reasons advanced by defendant for his discharge.

In further attempts to establish a nexus between his age and his termination, Pfeifer points to the age of his successor and the age of other employees of defendant terminated at or about the same time. But the mere fact that Pfeifer was replaced by an individual who was only 33 years of age is hardly probative of discrimination. Congress itself and various courts construing the ADEA have consistently alluded to this happenstance as raising no presumption of discrimination, because "in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in." *Laugesen v. Anaconda Co.*, 510 F.2d 307, 313 n. 4 (6th Cir.1975) (discussing the legislative history of the ADEA); *see also La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1413 (7th Cir.1984) ("[T]he mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination."). Moreover, plaintiff's assertion of discrimination is, on the record here, all the more dubious since his replacement was hired at a starting salary which was greater than that of Pfeifer. Thus, in this case plaintiff's termination could not have been motivated by the most common underlying reason for age discrimination, namely a savings in cost.

Plaintiff's charge that there was a "youth movement" at Lever Bros. is similarly without merit. Plaintiff has identified five employees over age 40 who allegedly were terminated on account of their age. But plaintiff has failed to provide any specific facts concerning the performance by these employees of their job responsibilities and the reasons for their discharges. Moreover, it is apparent from the record

here that four of these employees were terminated pursuant to a reduction in force program and that Pfeifer himself had given them unfavorable evaluations and had assigned them the lowest rankings in their respective divisions. Indeed, at his deposition, Pfeifer testified that his evaluations and his rankings of these employees were unrelated to their age.

Plaintiff has advanced other even more tenuous arguments in support of his claim of age discrimination. No discussion of these additional contentions is warranted, for, on this record, this Court concludes that they are without merit. Throughout this litigation, plaintiff has made broad charges with little or no documentation or evidentiary support. Plaintiff's conclusory allegations have not been supported by any specific facts which directly or inferentially would prove discrimination by defendant. *See Friend v. Leidinger*, 446 F.Supp. 361, 375–81 (E.D.Va.1977), *aff'd*, 588 F.2d 61 (4th Cir.1978). Rather, the facts of record here refute all of plaintiff's contentions and establish as a matter of law that Pfeifer was not terminated on account of his age, but was discharged because of his inability to meet the reasonable expectations of his employer. The Fourth Circuit has made clear that unsupported allegations such as those advanced by plaintiff in this case, "do not confer talismanic immunity from Rule 56." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985); *see also id.* at 364 ("wholly speculative assertions will not suffice [to create a genuine issue for trial.]").

Accordingly, summary judgment in favor of defendant must be granted as to all of the claims asserted by plaintiff in this case under the ADEA.[5] An appropriate Order will be entered.

---

5. As a result of the Court's findings and conclu-     sions herein, plaintiff is likewise not entitled to

any recovery of damages under the Fair Labor