**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,**

**v.**

**SOMERSET COUNTY BOARD OF
EDUCATION, Defendant.**

**Civ.A. No. R–90–2161.**

United States District Court,
D. Maryland.

Aug. 15, 1991.

Arlene T. Shadoan, Regina M. Andrew and David Norken, E.E.O.C., Baltimore, Md., for plaintiff.

Douglas M. Topolski, Miles & Stockbridge, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is defendant Somerset County Board of Education's ("Board") motion for summary judgment. Pursuant to Local Rule 105.6 (D.Md.1989), the Court will decide the motion without need for a hearing. For the reasons set forth below, the motion will be denied.[1]

### Standards for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure serves the important purpose of "conserv[ing] judicial time and energy by avoiding unnecessary trial and by providing a speedy and efficient summary disposition" of litigation in which the plaintiff fails to make some minimal showing that the defendant may be liable on the claims alleged. *Bland v. Norfolk & Southern R.R. Co.*, 406 F.2d 863, 866 (4th Cir.1969). The applicable standards for analyzing a motion for summary judgment under Rule 56 are well-established. The defendant[2] seeking summary judgment bears the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. In determining whether the defendant has sustained this burden, this Court must consider whether, when assessing the evidence in the light most favorable to the plaintiff, a "fair-minded jury could return a verdict for the plaintiff...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Pulliam Investment Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987). That is, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Id., see also Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984).

Particular care is required when motive is at issue, as "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of claim or defense." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). This is bolstered by the fact that "resolution of [intent] depends so much on the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination." *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979). It is against these standards that the Court shall review defendant's motion.

### Background

Reading the facts in a light most favorable to the plaintiff, the Court finds the following record upon which it must determine if summary judgment is appropriate.

Joanne Scott ("Scott"), the person who was allegedly discriminated against on the basis of her age, was born on March 15, 1941, and therefore was 47 years old when the challenged decision of the Board was made in the summer of 1988. Scott has been employed by the Board since September 1969. From 1969 until 1975 she served as a teacher at Westover Elementary School ("Westover"). In 1975 Scott became a teaching vice principal at Westover, where she taught a full class schedule while performing administrative duties. In 1978 she was appointed to the position of teaching principal at Westover, a position that she continued to hold until 1988.

Scott's tenure as teaching principal at Westover was interrupted briefly in 1986. Pursuant to a proposed redistricting plan, the student population at Westover was to have been increased from 120–140 to 300–400 students. The then superintendent of schools, John Lynch ("Lynch"), proposed moving Scott from the teaching principal position back into a full-time classroom position. Scott contacted Lynch and request-

---

**1.** Because the Court denies defendant's motion for summary judgment on the merits, plaintiff's request that the Court deny or stay its decision on the motion until further discovery could be taken is moot.

**2.** The analysis is equally applicable, of course, to motions for summary judgment made by plaintiffs.

ed to be moved to another school. Lynch honored the request by assigning Scott to a teaching position at Crisfield Elementary School. Lynch then changed his mind and assigned Scott to the principal position at Princess Anne Elementary School ("Princess Anne"). The redistricting plan, however, was rejected by the State Board of Education and Scott was returned to her previous position, as principal of Westover.

In June of 1988, Lynch resigned as superintendent and was replaced by Dr. H. DeWayne Whittington. Whittington had served previously as the assistant superintendent. In addition to replacing the superintendent, the school board decided to consolidate four teaching principal positions into two principal positions. One of the consolidations involved the merger of the Westover teaching principal position with that of another elementary school to form one principal position.

On June 23, 1988, Whittington met with Scott and explained to her that she would have to apply for the consolidated principal positions if she were interested. Whittington also suggested that Scott apply for the principal position at Princess Anne as the position had recently become vacant.

On June 28, 1988, Scott sent a letter to Whittington along with a resume requesting to be considered for the two consolidated elementary principal positions and the principal vacancy at Princess Anne.

Pursuant to Board policy, Whittington had the discretion to transfer those persons holding supervisory or administrative positions to principal positions without Board approval. As to persons not holding supervisory or administrative positions, appointment to a principal position required a nomination by the superintendent and the approval of the Board. Because Scott's position involved supervisory and administrative functions, she could have been transferred to a principal position at Whittington's discretion, without Board approval.

Whittington elected to fill the two consolidated principal positions by transfer, and therefore neither vacancy announcements nor interviews were necessary in connection with those positions. The persons chosen to fill the positions were Mauguerite Robinson, born on July 24, 1933 and Frank O'Rourke, born on October 3, 1937.

Whittington, however, elected to fill the Princess Anne Principal position by announcing a vacancy and accepting applications rather than transferring eligible persons from within the system. The vacancy announcement for the Princess Anne Principal position listed the following as required qualifications: 1) certification as an elementary school principal or be eligible for said certification under the requirements adopted by the Maryland State Board of Education; 2) a minimum of five years successful teaching experience; 3) knowledge of the elementary school program and a sound understanding of elements of good instruction; 4) demonstrated a successful experience in previous positions; 5) a strong background in the area of elementary and middle school education; 6) knowledge of current curriculum practices and trends; and 7) the ability to develop an effective working relationship with students, staff, and the general public.

Whittington was charged with the responsibility of recommending a candidate to the Board for the Princess Anne position. The Board instructed Whittington to adhere to the following guidelines in making his recommendations: 1) the best qualified candidate was to receive first consideration; 2) present employees of the board were to receive preference if their qualifications were essentially the same as an outsider; 3) gender and age, among other things, were to be given no consideration; and 4) the candidates were required to be evaluated and assessed in the areas of (a) teaching experience, (b) supervisory and administrative experience, (c) work experience, (d) efficiency ratings and/or recommendations, (e) personal qualifications, and (f) eligibility for certification by the Maryland Board of Education.

Prior to Whittington making his recommendation, the candidates were to be interviewed by a committee of six individuals ("Interview Committee") that had been selected by Whittington and the Board. The Interview Committee was charged with

making a recommendation to Whittington, in rank order, of those candidates that the Interview Committee deemed worthy of consideration for the position. After interviewing 10 candidates over two days the Interview Committee ranked Scott first, and Cheryl Richardson second among the five persons found to be worthy of consideration. Despite Scott's number one ranking by the Interview Committee, Whittington elected to recommend Richardson to the Board. The Board then approved Whittington's choice.

At the time of her selection Richardson was 30 years old and her qualifications included: 1) a Bachelor's Degree in special education; 2) a Master's Degree in Communicative Disorders; 3) high school special education teacher in Somerset County for 8 years; and 4) GED instructor for 2 years. Richardson had no elementary teaching or administrative experience.

Scott had the following relevant qualifications at the time of her denial: 1) Master's Degree in Education with a concentration in Administration and Supervision; 2) an Advanced Professional Certification equalling thirty credit hours; 3) certification by the State of Maryland for the position of principal/supervisor; 4) elementary school teacher for 25 years; 5) elementary school vice principal for 2 years; 6) and teaching principal for 10 years.

Over the twenty year period Scott had been employed by the Board, she had received periodic performance appraisals all of which rated her work as commendable. From 1980 through 1988, a period during which Scott served as a teaching principal, former superintendent Lynch evaluated Scott's performance in planning and organization, personnel management, administrative functions, community-public relations, interaction with the system, program and personnel management, and interpersonal leadership and personal. For each year, Lynch found that Scott had successfully met all job targets and consistently

praised her work.[3] Moreover, over her entire period of employment, Scott had not been reprimanded verbally or in writing concerning her work.

### Analysis

■ Plaintiff, the Equal Opportunity Employment Commission ("EEOC"), brings suit alleging that the Board demoted and failed to promote Scott in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

■ To establish discrimination in an age discrimination case, a party must establish by a preponderance of the evidence that but for the defendant's motive to discriminate against an older employee, the challenged employment decision would not have been made. *E.g., English v. Pabst Brewing Co.,* 828 F.2d 1047, 1051 (4th Cir. 1987), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988).

■ A party may prove "but for" causation in age discrimination cases by either using ordinary means of proof through direct or indirect evidence or by using the judicially fashioned proof scheme used in Title VII cases. *Id.* at 1051. Plaintiff does not offer to prove its case by ordinary means of proof. Rather it seeks to prove its case by utilizing the proof scheme used in Title VII cases.

The law traditionally applied to claims for discriminatory treatment in violation of Title VII is drawn from the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To prevail on a claim of disparate treatment in employment, the plaintiff must prove that the defendant intentionally discriminated against Scott. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988).

To assist the court in making this determination, *McDonnell Douglas* and its prog-

---

**3.** Defendant claims that Lynch's performance appraisals are not entitled to any weight because Lynch is alleged to have been a lenient appraiser who rated everyone's performance as good. As part of a motion for summary judge-ment, the Court is required to read the facts in a light most favorable to the plaintiff. This being the case, the Court must interpret the evaluations prepared by defendant's agent to mean that Scott had performed her job commendably.

eny have established a burden-shifting regime designed to "progressively sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). At first, the burden is on the plaintiff to show a *prima facie* case of discrimination. If the plaintiff succeeds in making out a *prima facie* case, a presumption of discrimination is formed and the burden shifts to the defendant to rebut this presumption by "articulat[ing] some legitimate, nondiscriminatory reason for the" employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant carries this burden of production, the burden shifts back to the plaintiff to demonstrate that the purportedly legitimate reasons offered by the defendant were mere pretext for discrimination. *Burdine*, 450 U.S. at 253, 255 n. 10, 101 S.Ct. at 1093, 1095 n. 10. While the burden of production shifts from the plaintiff to the defendant and then back to the plaintiff, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093, *quoted in Watson*, 487 U.S. at 986, 108 S.Ct. at 2784.[4]

■ To state a *prima facie* case of discriminatory denial of promotion under the Title VII framework, a plaintiff must dem-

onstrate that 1) Scott is a member of the protected age group; 2) she applied for and was qualified for an available position; 3) she was rejected for the position; and 4) upon Scott's rejection, her employer either continued to seek applicants for the position or filled the position with a person outside of the protected class.[5] *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (Title VII race discrimination case).

Notwithstanding defendant's claims to the contrary, the Court finds that plaintiff has demonstrated a *prima facie* case of age discrimination. It is undisputed that Scott was a member of the protected class, and that Richardson was not a member of the protected class at the time of the challenged decision.[6] It is also undisputed that Scott applied for and was rejected for the Princess Anne principal position. Moreover, when viewing the evidence in a light most favorable to the plaintiff, it is clear that Scott was qualified for the Princess Anne Principal position as she met all of the qualifications set forth in the vacancy announcement. Scott was certified as an elementary school principal; she had a minimum of five years successful teaching experience; she had knowledge of the elementary school program and a sound understanding of elements of good instruction; as evidenced by her performance appraisals, she demonstrated a successful experience in previous positions; she had a

---

**4.** In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court held that when a plaintiff presents direct evidence that an employer placed substantial, although unquantifiable, reliance on a forbidden factor in making an employment decision, the burden should be shifted to the defendant to prove that its decision would have been justified by wholly legitimate concerns.

At least one court has found that the approach utilized in *Hopkins* is applicable to age discrimination claims under the ADEA. *Summers v. Communications Channels, Inc.*, 729 F.Supp. 1234 (N.D.Ill.1990). Because plaintiff offers no direct evidence of the alleged age discrimination, the Court need not decide whether a plaintiff alleging age discrimination is able to rely on the burden shifting approach enunciated in *Hopkins*.

**5.** The Court notes that both plaintiff and defendant, relying on *Holmes v. Bevilacqua*, 794 F.2d

142, 147 (4th Cir.1986), have postulated that plaintiff, as part of its *prima facie* case, must demonstrate that Scott was denied the Princess Anne Principal position under circumstances giving rise to an inference of discrimination.

In *Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908 (4th Cir.1989), the Fourth Circuit recognized that the *prima facie* case formulation in *Patterson* is less exacting than that previously set forth in *Holmes*. *Id.* at 910 n. 1. Because the decisions of the Supreme Court take precedence over those of the Fourth Circuit, it is clear that the Court is required to apply the *prima facie* formulation set forth in *Patterson* and that there is no requirement that plaintiff show that the denial of the position to Scott gives rise to an inference of discrimination.

**6.** ADEA applies to persons over 40 years of age; Scott was 47 and Richardson was 30 at the time of the challenged decision. 29 U.S.C. § 631(a).

strong background in the area of elementary and middle school education; she had knowledge of current curriculum practices and trends; and she had exhibited the ability to develop an effective working relationship with students, staff, and the general public.

The Court now turns to the issue of whether the Board met its burden of production by articulating a legitimate, nondiscriminatory reason for the employment action. Without detailing the plethora of episodes proferred as justification for Scott's non-selection, suffice it to say that it is the Board's position that "it was Ms. Scott's lack of the important qualifications of leadership ability and self-motivation that played a large role in her failure to secure the position in favor of Ms. Richardson." Defendant's Memorandum in Support of its Motion for Summary Judgment at 36. Defendant maintains that these impressions of Scott were held both by Whittington and members of the Board. Even if the Court were to find that defendant had articulated a nondiscriminatory reason for Scott's non-promotion, the Court would be compelled to find that when viewing the evidence in a light most favorable to the plaintiff, the plaintiff has established that defendant's stated reason was pretextual.

To prove pretext, plaintiff must demonstrate that defendant's explanation is unworthy of credence or that it is more likely that a discriminatory reason motivated the employer's actions. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *Pfeifer v. Lever Bros. Co.*, 693 F.Supp. 358, 365 (D.Md. 1987), *aff'd* 850 F.2d 689 (4th Cir.1988).

The Fourth Circuit Court of Appeals has held that a party alleging age discrimination cannot avoid summary judgment merely by refuting the non-discriminatory reasons articulated for the employment decision but rather the reason for the "lack of credence must be the underlying presence of proscribed discrimination." *Holder v. City of Raleigh*, 867 F.2d 823, 827–28 (4th Cir.1989); *see also, Goldberg v. B. Green and Company*, 836 F.2d 845, 849 (4th Cir.

1988) (dicta, as the court found plaintiff had failed to prove *prima facie* case).

The decisions of the Fourth Circuit make it clear that even if the trier of fact were to find that the nondiscriminatory reasons proffered by the employer were not the true reasons behind the employment action, the plaintiff would not be entitled to a judgment. Rather the plaintiff is entitled to a judgment only if it meets its ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Of course, the presence of intentional discrimination may be shown by circumstantial evidence of sufficient probative force to reflect a genuine issue of material fact. *Goldberg*, 836 F.2d at 845.

Plaintiff has established that during Scott's entire period of employment, and most relevantly during the period when she served as teaching principal, Scott had received nothing other than commendable performance appraisals. Despite her admirable performance appraisals, the Board now claims that her non-selection was due to a myriad of performance deficiencies. Moreover, when viewed in a light most favorable to the plaintiff, a trier of fact certainly could conclude that Scott was more qualified for the Princess Anne Principal position than Richardson as Richardson had neither any administrative experience nor elementary education experience.

Based on these facts, the Court finds that there is an issue of credibility as to whether the alleged beliefs of the Board and Whittington as to Scott were genuinely held. Because the Court concludes that there is a genuine issue of material fact regarding the motivation for the employment decision due to the circumstantial evidence of discrimination on the basis of age, plaintiff's motion for summary judgment must be denied. This is not to say that the trier of fact ultimately could not conclude that discrimination was not the motive behind the Board's decision, but rather that when viewing the evidence in a light most favorable to the plaintiff, the Court con-

cludes that a reasonable jury could so find.[7]

■ Defendants also move for summary judgment on plaintiff's claim of willful violation of the ADEA. In order to prove a willful violation of the ADEA, a plaintiff is required to prove more than that the employer knew of the ADEA and that the employer took an adverse employment action with respect to an older employee because of their age. *Gilliam v. Armtex,* 820 F.2d 1387, 1390 (4th Cir.1987). Although the *Gilliam* court did not go so far as to define "willful" in the ADEA context, it upheld a decision entering judgment notwithstanding the verdict because there was no evidence that employer's actions were taken in bad faith or were utterly lacking in justification as to warrant a finding of willfulness. *Herold v. Hajoca Corp.,* 864 F.2d 317, 323 (4th Cir.1988); *see Gilliam,* 820 F.2d at 1390. Moreover, the *Gilliam* court cited with approval a Third Circuit Case that equated willfulness with outrageousness. *See Dreyer v. Arco Chemical Co.,* 801 F.2d 651 (3d Cir.1986).

In response to an interrogatory requesting the facts on which plaintiff relies as to its claim of willfulness, plaintiff answered that defendant acted with knowledge or in reckless disregard of the prohibitions under the ADEA. Pursuant to *Gilliam,* plaintiff relies on the very facts that are insufficient to establish willfulness under the ADEA.

Although there is an issue of material fact as to the motivation for the employment action taken in this case, there is nothing in this record indicating that defendant acted in bad faith, in a manner utterly lacking in justification, or in an outrageous manner. Accordingly, the Court will grant defendant's motion for summary judgment as to the issue of willfulness.

Accordingly, it is this 14th day of August, 1991, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion for summary judgment is DENIED except for the issue of willfulness as to which the motion for summary judgment is GRANTED.

---

7. The Court notes that the parties debate the evidentiary relevance of a comparative treatment of a younger member of the protected class under the ADEA. The plaintiff seeks to use the comparison as a means of establishing its *prima facie* case and to demonstrate pretext.

While plaintiff gives significant treatment to the issue of whether a younger member of the protected age group may be compared to an older member of the protected age group for purposes of demonstrating discrimination, defendant merely mentions the issue by way of a footnote. Because the Court does not rely on the evidence of relative treatment of a younger member of the protected class in denying defendant's motion for summary, it need not decide the issue at this time. If the parties wish to have the issue determined before trial, it should be the subject of a fully briefed motion *in limine.*