Kimberly L. RILEY and Laura Carros, Plaintiffs,

v.

TECHNICAL AND MANAGEMENT SERVICES CORPORATION, INC., Defendant.

Civ. A. No. AW–93–3518.

United States District Court, D. Maryland, Southern Division.

Jan. 11, 1995.

Richard L. Swick, Diane Bodner, Washington, DC, for plaintiffs.

Anthony C. Epstein, Susan R. Podolsky, Washington, DC, for defendant.

## MEMORANDUM OPINION

WILLIAMS, Judge.

Kimberly Riley and Laura Carros commenced this action against their former employer, Technical and Management Services Corporation ("TAMSCO"). They contend that TAMSCO discriminated against them on the basis of their gender and retaliated against them for raising discrimination and sexual harassment concerns in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Presently before the Court is TAMSCO's motion for summary judgment. A hearing was held on this motion on January 9, 1995.[1] For the reasons set forth below, the Court will grant summary judgment.

### Factual Background

TAMSCO provides management and technical services involving computer sciences, engineering support services, and logistic support services to its clients. In September of 1985, the U.S. Coast Guard awarded TAMSCO a contract to develop and maintain an Aviation Computerized Maintenance System ("ACMS"). Under this contract, TAMSCO tracks, schedules, and reports all maintenance activities of Coast Guard aircraft. The ACMS contract is cost reimbursable. That is, TAMSCO's costs, including hourly labor costs, are reimbursed in full by the Coast Guard. Declaration of Margaret Harrison ("Harrison Dec.") at ¶¶ 4–5. The Plaintiffs' duties at TAMSCO centered on this contract.

The Plaintiffs' allegations focus on events that occurred from approximately May, 1992, until October, 1992. In early May 1992, the Plaintiffs met with Margaret Harrison, then Director of ADP Services and Software Development for TAMSCO. The Plaintiffs reported what they considered significant morale problems at the TAMSCO office located in Beltsville, Maryland. Specifically, the Plaintiffs reported that women at that office were troubled by graphic sexual comments made by certain TAMSCO employees, including Ben Davis. Riley Dec. at ¶ 16; Carros Dec. at ¶ 16. Although Harrison thanked them for their input, the Plaintiffs contend that TAMSCO took no action to remedy the situation.

On or about May 19, 1992, Harrison promoted Mr. Davis to the position of Technical Manager of the ACMS program. Harrison Dec. at ¶ 24. Davis supervised the entire ACMS program (including Carros and Riley) in this capacity. Carros contends that she was qualified for this position, but that she was denied an opportunity to compete for it. Plaintiffs' Opposition ("Opp."). at 15; Carros Dec. at ¶¶ 20–22.

In addition, in July 1992, TAMSCO informed the Plaintiffs that their working hours (and consequently their salary) would be reduced effective August 1, 1994. TAMSCO reduced Carros' hours from forty (40) to twenty (20) hours a week and Riley's from forty (40) to thirty (30) hours per week. Opp. at 15.

Carros was upset because she was not promoted to Technical Manager and because of the reduction in her hours. Carros Dec. at ¶¶ 19, 24. Furthermore, Carros contends that soon after the reduction of her hours her supervisors began to unfairly criticize her work and work habits and refused to allow her to attend a training seminar. Opp. at 17–18; Carros Dec. at ¶¶ 24–27. Carros felt that TAMSCO had created an intolerable working environment. She resigned in September of 1992.

In October of 1992, TAMSCO terminated Riley for what Harrison deemed a serious neglect of duty in failing to store a full copy

---

**1.** The Plaintiffs had also contended that TAMSCO violated the Equal Pay Act, 29 U.S.C. § 206(d)(1). The Plaintiffs formally withdrew these claims at the hearing.

of the ACMS system off site. Harrison Dec. at ¶¶ 30–39. Riley, however, contends that she was meeting TAMSCO's legitimate expectations and that TAMSCO's proffered reason for her termination is merely a pretext. Opp. at 19–20.

The Plaintiffs contend that TAMSCO took the complained of actions in retaliation for their raising allegations of sexual harassment and because they are women. They each filed a charge of discrimination with the Equal Opportunity Commission ("EEOC") alleging *only* discrimination based on their sex and then filed their Complaint.

### Summary Judgment Principles

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celeotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). *See also Bland v. Norfolk and Southern Railroad Co.,* 406 F.2d 863, 866 (4th Cir.1969).

In determining whether genuine and material factual disputes exist, resolution of which requires trial, the Court has reviewed the parties' respective memoranda and the many exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiffs. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Applying these principles to the record in this case, the Court concludes that summary judgment for TAMSCO must be granted.

### Discussion

#### I. *Sexual Harassment and Retaliation*

Prior to filing a Title VII claim, a claimant must pursue and exhaust administrative remedies with the EEOC or its state equivalent. Courts may only exercise jurisdiction over claims encompassed within the EEOC charge and claims "like or related to allegations contained in the charge, or which grow out of such allegations." *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir.1992) (citations omitted). Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge circumvents the EEOC's investigatory and conciliatory role. *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 752 (E.D.Va.1991) (citations omitted).

In their opposition to the motion for summary judgment, the Plaintiffs for the first time raised allegations of sexual harassment. Opp. at 12–16. The Plaintiffs contend that inappropriate comments by certain TAMSCO employees created a hostile work environment and constituted sexual harassment. Opp. at 12; Riley Dec. at ¶ 15; Carros Dec. at ¶ 15. They further contend that TAMSCO retaliated against them for raising their concerns to Harrison. Opp. at 14; Riley Dec. at ¶¶ 18–21; Carros Dec. at ¶¶ 19–30.

However, there is no mention of a hostile work environment or sexual harassment of any kind in their EEOC charges (or in their Complaint). Instead, each EEOC charge merely alleges that TAMSCO discriminated against them because they are women.[2] Consequently, the sexual harassment allegations were not properly before the EEOC and summary judgment for TAMSCO as to these allegations is warranted. *Nicol v. Imagematrix, Inc.,* 767 F.Supp. at 752–54, (citations omitted).

Similarly, the Plaintiffs' retaliation claims were not presented to the EEOC. On their EEOC charging forms, neither of the Plaintiffs marked the box entitled "retaliation." The courts have recognized that a plaintiff need not exhaust his administrative

---

2. In pertinent part, Riley's EEOC charge states: "I believe that I was discriminated against in being paid less than other managers and discharged because of my sex, female ..." Similarly, Carros's EEOC charge states: "I believe that I have been discriminated against because of my sex, female ..."

remedies for retaliation that grows out of an earlier charge. *Nealon v. Stone*, 958 F.2d at 590 (citations omitted). This rule recognizes that a plaintiff will be reluctant to again report to the EEOC after his employer has taken action against him for filing the first charge. *Id.*

However, this rule does not apply in this case. Plaintiffs must exhaust their administrative remedies when the alleged retaliation could have been raised in the original EEOC complaint. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546–67 (6th Cir. 1991), *citing Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545, n. 2 (7th Cir.1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). Here, each alleged act of retaliation occurred prior to the filing with EEOC, but the Plaintiffs still did not allege retaliation in their charges. Therefore, the allegations of retaliation cannot withstand TAMSCO's motion for summary judgment. *Id. See also Hicks v. Baltimore Gas & Elec. Co.*, 829 F.Supp. 791, 794–95 (D.Md.1992) (district court lacks subject matter jurisdiction when claims of retaliation and termination not filed with EEOC), *aff'd*, 998 F.2d 1009 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 726, 126 L.Ed.2d 690 (1994).

## II. *Gender Discrimination*

Congress did not enact Title VII as a panacea for every setback that members of a protected class suffer in their place of employment. "[T]here is no automatic presumption that every adverse personnel action directed at a [female] employee . . . results in a violation of [Title VII]." *Goldberg v. B. Green and Co.*, 836 F.2d 845, 849 (4th Cir. 1988) (citations omitted). To prevail under Title VII, the Plaintiffs must prove that TAMSCO intentionally discriminated against them because they are women. *Lincoln v. Board of Regents*, 697 F.2d 928, 936 (11th Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). The Plaintiffs, however, need not prove that their gender was the sole motive behind the adverse employment decisions of which they complain. *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1076 (5th Cir.1981). Instead, it is enough if gender

was a significant factor affecting those decisions. *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir.1980). The Plaintiffs will prevail if they show that the adverse employment decisions would not have been made "but for" their gender. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).

The Plaintiffs may attempt to prove unlawful discrimination in one of two ways. First, under the ordinary principles of proof, they may introduce "direct or indirect evidence relevant to, and of sufficient probative force to support as a reasonable probability the inference that but for her sex, a different result would have occurred." *Saunders v. Stone*, 758 F.Supp. 1143, 1147 (E.D.Va.1991), *citing Lovelace v. Sherwin– Williams Co.*, 681 F.2d 230, 242 (4th Cir. 1982). This may be done by introducing incriminating statements, *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983), or by demonstrating a general pattern of discrimination in TAMSCO's employment practices. *Reynolds v. Abbeville County School District*, 554 F.2d 638, 642 (4th Cir.1977).

Alternatively, because federal courts have recognized the inherent difficulty in proving discriminatory intent, the Plaintiffs may satisfy their burden through the judicially created, three step proof scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* permits the Plaintiffs, in the absence of direct or circumstantial evidence of discrimination, to raise an inference that adverse employment decisions were made for discriminatory reasons.

To avail herself of the *McDonnell Douglas* presumption, a plaintiff claiming discharge on the basis of gender must first satisfy the elements of a prima facie case. A plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she was performing the job satisfactorily; (3) that she was discharged or constructively discharged; and (4) that she was replaced by someone with comparable qualifications out-

side the protected class or that the position remained open to similarly qualified applicants after her discharge. *Douglas v. PHH FleetAmerica Corp.*, 832 F.Supp. 1002, 1009 (D.Md.1993) (citations omitted); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir.1993) (age discrimination); *Carter v. Ball*, 33 F.3d 450, 458–59 (4th Cir.1994). Presentation of a prima facie case raises an inference of discrimination.

■■■ If the plaintiff establishes a prima facie case, the defendant may rebut the inference of discrimination with evidence of a legitimate, nondiscriminatory reason for its actions. *Carter v. Ball*, 33 F.3d at 459 (citations omitted). The presumption then drops from the case. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). The plaintiff must then prove by a preponderance of the evidence that the reasons advanced by the defendant are a pretext for discrimination and that the defendant intentionally discriminated against her on the basis of her gender. *Wileman v. Frank*, 979 F.2d 30, 33 (4th Cir.1992) (citations omitted).

■■■ To avoid summary judgment, a plaintiff must present evidence from which a reasonable jury could conclude that her employer's actions were based on her sex or that the reason advanced by the defendant is merely a pretext for discrimination. *Id.; Mitchell v. Data General Corp.*, 12 F.3d at 1316–17. *See St. Mary's Honor Center v. Hicks*, —— U.S. ——, —— – ——, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993). The plaintiff must present specific evidence that raises a material and genuine factual dispute. Fed.R.Civ.P. 56.

### A. Carros' Claim of Constructive Discharge

■■■ Carros has failed to establish a prima facie case. It is undisputed that TAMSCO replaced her with another female employee. Harrison Dec. at ¶ 21. Thus, Carros is not entitled to the inference that TAM-

SCO constructively discharged her because of her sex.[3]

■■■ Moreover, Carros has not demonstrated that she was constructively discharged. To prove a claim of constructive discharge a plaintiff must show both that the employer's actions were intended to force her to quit and that the working conditions were intolerable. *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir.1989) (Wilkinson, dissenting), *op. adopted by majority en banc*, 900 F.2d 27, 28 (4th Cir.1990). She has failed to satisfy either of these requirements.

First, Carros cannot demonstrate that TAMSCO's actions were deliberate. Her primary support for this claim is that TAMSCO reduced her work hours from forty (40) hours per week to twenty (20) hours per week. However, it is undisputed that TAMSCO attempted to find additional work for her. Harrison at Dec. at ¶ 20. It is difficult to see how TAMSCO forced her to quit if it attempted to find additional work for her. *See E.E.O.C. v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 672 (4th Cir.1983), *rev'd on other grounds*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

■■■ Similarly, TAMSCO's decision to promote Mr. Davis instead of her does not show that TAMSCO intended for her to quit. She emphasizes that she was more qualified for the position. Carros Dec. at ¶¶ 20–22. However, unlike Carros, Mr. Davis had prior management experience at TAMSCO as well as experience in aerospace and aviation maintenance. Harrison Dec. at ¶¶ 25–26. Her view of her qualifications is irrelevant unless she shows that TAMSCO's position as to her qualifications was a pretext for discrimination. *Douglas v. PHH FleetAmerica Corp.*, 832 F.Supp. 1002, 1009–10 (D.Md.1993) (citations omitted). Carros has presented no evidence to that effect. Finally, a failure to promote alone is insufficient as a matter of law to establish a constructive discharge. *E.E.O.C. v. Federal Reserve Bank of Richmond*, 698 F.2d at 672.

---

**3.** Carros has submitted insufficient evidence under ordinary principles of proof. She alleges that TAMSCO did not promote certain unnamed women and that a TAMSCO employee once threatened to deny her a pay raise because she planned to take pregnancy leave. Opp. at 24, n. 19. She concedes, however, that TAMSCO did award her the pay raise. Opp. at 24, n. 19.

█ She has also failed to show that her working conditions were intolerable. She contends that her supervisors unfairly criticized her attire and work habits, that she was required to complete time consuming reports, that another employee removed a speaker phone from her office, and that she was not allowed to attend a training seminar.[4] Carros Dec. at ¶¶ 25–27; Opp. 17–18; 31. However, employees are not guaranteed a stress free environment. *Carter v. Ball*, 33 F.3d at 459 (citations omitted). Her dissatisfaction with work assignments and feelings of being unfairly criticized are simply insufficient to support a claim of constructive discharge. *Id.*

█ Assuming *arguendo* that she has established a prima facie case, TAMSCO is still entitled to summary judgment as it has presented a legitimate, nondiscriminatory reason for the reduction in her hours, namely that it was part of cost cutting plan. Harrison Dec. at ¶ 16. An effort to cut costs is certainly a legitimate business practice. *See Green v. Fairfax Co. School Bd.*, 832 F.Supp. 1032 (E.D.Va.1993), *aff'd*, 23 F.3d 400 (4th Cir. 1994). In addition, a Coast Guard representative, Lieutenant Commander Roger Gayman, specifically suggested a reduction of Carros hours. Harrison Dec. at ¶ 14. Moreover, TAMSCO discharged two male employees as part of Harrison's cost cutting program. Harrison Dec. at ¶ 16. Under these circumstances, Carros may avoid summary judgment for TAMSCO by creating a genuine issue of material fact as to whether TAMSCO's cost cutting program was pretextual. *St. Mary's Honor Center v. Hicks*, —— U.S. at ——, 113 S.Ct. at 2749; *Mitchell v. Data Gen. Corp.*, 12 F.3d at 1316–17.

█ She has not met this burden. Carros claims that TAMSCO's reduction in cost policy was pretextual as the total amount of the ACMS contract increased, an "extra layer of management was added," and certain male employees received allegedly large bonuses. Carros Dec. at ¶ 23; Opp. at 25. These contentions, however, simply do not demonstrate that TAMSCO's proffered reason is pretextual.

█ Even if the total amount of the ACMS contract increased, TAMSCO and its client still had reason to cut inefficient expenditures. For instance, simply receiving a raise does not result (hopefully) in an individual neglecting to cut wasteful spending. Furthermore, TAMSCO could have concluded that the "extra layer of management" and bonuses increased productivity. Perhaps TAMSCO could have taken steps to cut costs in the ACMS program without reducing her hours, but that only demonstrates that TAMSCO had other options. Finally, again, TAMSCO's client specifically suggested reducing her hours. Harrison Dec. at ¶ 14. Congress did not intend for courts to use Title VII to second-guess these types of business and personnel decisions. *Pfeifer v. Lever Bros. Co.*, 693 F.Supp. 358, 364 (D.Md. 1987), *aff'd*, 850 F.2d 689 (4th Cir.1988) (citations omitted). Carros has failed to demonstrate a prima facie case or that TAMSCO's explanation is pretextual, and TAMSCO is entitled to summary judgment.

### B. *Riley's Discharge*

█ Riley contends that TAMSCO discharged her because of her gender. However, as explained below, she has not shown that she was performing in accordance with TAMSCO's expectations. Therefore, she has failed to establish a prima facie case of gender discrimination. *Douglas v. PHH FleetAmerica Corp.*, 832 F.Supp. at 1009 (citations omitted).

TAMSCO terminated Riley for gross negligence in the performance of her duties. Harrison Dec. at ¶ 30. Riley did not store a full copy of the ACMS computer system at an off site location. The ACMS system consists of a database and program, and the database contains the maintenance records for Coast Guard aircraft. Riley Dec. at ¶¶ 8–12; Opp. at 26. Off site storage is an integral part of the ACMS contract. Harrison

---

4. She also contends that TAMSCO fabricated misconduct charges against her after she resigned. Opp. at 32, n. 25. These allegations are irrelevant because they occurred after she left TAMSCO and could not have affected her decision to resign.

Dec. at ¶ 31.[5] After learning that Riley, who was primarily responsible for storing the system off site, had not stored a full copy of the system off site for over two years and did not consider such storage important, Harrison terminated her. Harrison Dec. at ¶¶ 35–39.

Riley argues that she was in fact meeting TAMSCO's legitimate expectations. She points to her evaluations which were "above average to excellent." Opp. at 7–8; Plaintiffs' Exhibits 3–8. Those evaluations, however, are irrelevant as her failure to store the system off site was not known by TAMSCO at the time. *Billet v. CIGNA Corp.*, 940 F.2d 812, 826 (3d Cir.1991) (citations omitted). Thus, it is not correct that TAMSCO was satisfied with her performance.

Riley also vigorously argues that off site storage of the full system was not necessary. She argues that "short of a nuclear disaster, the backup tapes were secure in the fireproof safe [on site]." Riley Dec. at ¶ 11. However, as TAMSCO points out, off site storage provides protection against intentional sabotage. Dec. of Harrison at ¶ 33. Thus, the Court cannot say that off site storage was not necessary.

She also draws a distinction between the database and the program and maintains that off site storage of the program was not important. Opp. at 26–28. This distinction is immaterial because she admits that she stored neither the database or the program off site. Riley Dec. at ¶¶ 11, 12. Moreover, it is for TAMSCO, not this Court, to determine what storage procedures are appropriate. *Pfeifer v. Lever Bros. Co.*, 693 F.Supp. at 364. *See also Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989) ("An employer can set whatever performance standards he wants, provided that they are not a mask for discrimination on forbidden grounds such as race or age.") Therefore, Riley has not established a prima facie case of gender discrimination.

Assuming *arguendo* that she has established a prima facie case, she still cannot avoid summary judgment. To avoid summary judgment she must present evidence that TAMSCO's explanation for her termination is "unworthy of credence" or that her gender was the more likely reason for her termination. *Douglas v. PHH FleetAmerica Corp.*, 832 F.Supp. at 1010, citing, *Tuck v. Henkel Corp.*, 973 F.2d 371, 375 (4th Cir. 1992). Riley has failed to satisfy either of these standards.

To be sure, Riley vigorously asserts that TAMSCO's proffered reason is pretextual. She maintains that TAMSCO has not altered its storage methods even after her termination. Opp. at 26. She does not, however, make this assertion based on personal knowledge. Instead, she makes this assertion based on statements by Gary McBride, one of the individuals that replaced her. McBride Dep. at 28–29.

This evidence is insufficient to avoid summary judgment for TAMSCO. First, Harrison has consistently stated that after she terminated Riley she gave specific instructions that the database be stored off site. Supplemental Harrison Dec. at ¶ 2. Second, one of the individuals that replaced Riley has stated that he stores the database off site. Philip Zekan Dec. at ¶ 2. Third, Mr. McBride himself has clarified his statements and indicates that he did store the database off site. McBride Dec. at ¶ 3. Finally, any inconsistency between McBride's deposition testimony and his declaration is immaterial.[6] *See Dunavant v. Moore*, 907 F.2d 77, 79–80 (8th Cir.1990) (citations omitted) (inconsistency in deposition testimony and affidavits filed by persons not responsible for policy in question is immaterial for summary judgment purposes).

Riley also fails to provide reason to think that gender discrimination was the more like-

5. Riley apparently asserts that off site storage was not TAMSCO policy. Plaintiffs' Exhibits 24 and 25. However, at the hearing, it was conceded that she alone drafted these purported policy statements. The ACMS tapes were stored off site at TAMSCO corporate headquarters until 1989 or 1990. Riley Dec. at ¶¶ 11–12; Riley Dep. at 63, 72.

6. The Court notes that it is not clear that deposition testimony of Mr. McBride even pertains to off site storage after Riley's departure. McBride Dep. at 28–29.

ly reason for her dismissal. She contends that no one told her to immediately begin off site storage of the database and that she had ordered the necessary tapes to begin such storage when TAMSCO terminated her. Riley Dec. at ¶ 20. However, there is no requirement that TAMSCO give a warning prior to termination. Again, this Court does not second-guess such personnel decisions. *Pfeifer v. Lever Bros. Co.,* 693 F.Supp. at 364.

Riley further argues that there is evidence of TAMSCO's gender discrimination. She contends that male employees involved in the storage of the ACMS system were not terminated and that a male employee who apparently violated a TAMSCO policy relating to time cards received more lenient treatment although his breach of policy was more severe.[7] Opp. at 28–29; Riley Dec. at ¶ 21. Finally, she contends that Mr. Nicholas Innerbichler used a sex based slur at the moment of her termination. Opp. at 29; Kenneth Hopkins Dec. at ¶ 5.

 Each of these arguments are unpersuasive. First, Riley and the male employees were not similarly situated. In TAMSCO's opinion, as the employee directly responsible, Riley bore the responsibility for the failure to store a copy of the system off site. Harrison Dec. at ¶ 39. Furthermore, Riley had unilaterally determined to discontinue off site storage and she alone contended (and still does) that off site storage was not important. Riley Dep. at 80–81; 131–132; Harrison Dec. at ¶¶ 37–39. Employers are free to determine the severity of punishment in such circumstances. *See Morgan v. Massachusetts General Hosp.,* 901 F.2d 186, 191 (1st Cir.1990) (employer determined that one of two employees instigated altercation and hence employees were not similarly situated).

Also, the employee involved in the alleged time card policy violation is clearly not similarly situated to Riley as that is a completely

different policy violation. Again, this Court does not determine the relative importance of separate violations of business procedures. *Pfeifer v. Lever Bros.,* 693 F.Supp. at 364.

 In addition, the evidence of one sex based slur is insufficient as a matter of law to present a case of gender discrimination. Harrison made the decision to terminate her, and this one remark if made is hardly probative of gender based animus. *Douglas v. PHH FleetAmerica Corp.,* 832 F.Supp. at 1010; *Robinson v. Montgomery Ward Co.,* 823 F.2d 793, 797 (4th Cir.1987), *cert. den.,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988). Therefore, Riley cannot avoid summary judgment for TAMSCO.

---

7. In addition, she contends that TAMSCO removed her supervisory duties in 1990 when she reduced her hours because of her pregnancy. She contends that other employees were allowed to keep such duties even though they were also not on full time status. Opp. at 8–9. If true, this

is hardly evidence of gender based animus as the one employee cited by Riley as retaining such duties is also a female. Opp. at 8–9; Plaintiffs' Exhibit 12. Also, as noted in Section I of this Discussion, her allegations of retaliation and sexual harassment are irrelevant.