817 A.2d 915

Susan COHEN

v.

MONTGOMERY COUNTY DEPARTMENT OF
HEALTH AND HUMAN SERVICES, et al.

No. 2344, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Feb. 27, 2003.

T. Melindah Bush (Kerry Alan Scanlon, Kaye Scholer LLP, Washington, DC and Neil B. Katz, on the brief), Rockville, for appellant.

Sharon V. Burrell, Principal Counsel (Charles W. Thompson, Jr., County Attorney and Joann Robertson, Chief Counsel on the brief), Rockville, for appellee.

Argued before KRAUSER, SHARER, RODOWSKY, and LAWRENCE F. (Retired, specially assigned,) JJ.

KRAUSER, Judge.

The principal issue before us is whether an accommodation for a disabled employee is reasonable if it is granted after an unreasonable delay. In other words, is an accommodation delayed, an accommodation denied? Holding that it was not, the Circuit Court for Montgomery County dismissed the disability discrimination complaint of appellant Susan Cohen, a disabled Montgomery County employee, for failing to allege a cause of action against her employer, appellee the Montgomery County Department of Health and Human Services ("County"), and two departmental supervisors, John Kenney and Judith Unger. In doing so, the circuit court reasoned that the accommodation provided by the County, late or not, rendered appellant's complaint moot. It further found no factual basis for allowing appellant to proceed against either Kenney or Unger.

From that decision, appellant noted this appeal, claiming that the County's alleged seventeen month delay in granting her an accommodation denied her a "reasonable" accommodation and thus gave rise to a cause of action for disability

discrimination against the County. She further maintains that her complaint provides a sufficient basis for holding both Kenney and Unger individually responsible for that discrimination.

For the reasons that follow, we shall vacate the judgment of the circuit court and remand this case to that court for further proceedings consistent with this opinion.

### Facts

In reviewing the dismissal of a complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 72, 716 A.2d 258 (1998). Consequently, the only facts relevant to this appeal are those presented by appellant's complaint. That complaint states that, for over 20 years, appellant has been employed full-time as a social worker by the Montgomery County Department of Health and Human Services ("HHS"). In 1995, however, she was diagnosed with multiple sclerosis. Three years later, in 1998, she informed the County "of the precise nature of her disability and the fact that her condition resulted in weakness in both her upper and lower extremities."

In the spring of 1998, as "her illness was affecting her ability to perform some of the physical tasks required by her job," appellant applied "for a half-time position which became available with the Group Home Licensing Program of HHS's Public Health Services department that required no field work." She was told by a Public Health Services supervisor that "they were offering her the position because of her superior qualifications." In other words, the job was not offered as a reasonable accommodation.

She accepted that position but, as it was only part-time, continued working with the "Assisted Living Services program, within Aging & Disabilities Services," a position that did require field work. The field work required by her position with the Assisted Living Services program ("ALS") included:

"commuting to various adult foster care and group homes throughout the County, walking up flights of stairs to visit the residents and perform inspections of assisted living facilities, and taking clients to medical and other various appointments."

After learning that, because of "staff shortages," her duties at the ALS section were going to increase and include the "assignment of 'on-call' emergency coverage," appellant spoke to her supervisor as to whether she "could be exempted from this additional work assignment because of her condition." When no such assurances were forthcoming, she sought the advice of counsel.

On July 14, 1998, appellant, through counsel, notified the County "that she was concerned that some of the additional work demands 'may present an obstacle' if her legs 'continue to weaken due to her disease.'" Appellant "also advised the County that 'in the next few months, [she might] need a reasonable accommodation to enable her to continue to perform the essential functions of her job.'" A month later she provided a letter from her physician in support of that request.

On August 26, 1998, Judith Unger, "the administrator for Human Resources with the Department of Health and Human Services," asked Dr. Gawin Flynn, the County's occupational medical examiner, to evaluate appellant's "'ability to perform the full range of duties of her position' based on her request to be exempted from any 'on-call' assignments." After performing a "fitness for duty evaluation," Dr. Flynn stated, in a memorandum to Unger, that appellant was "'fit for duty as a Social Worker III with some restrictions.'" An accommodation later proved to be unnecessary as the department ultimately "decided not to implement any on-call assignments at that time."

By October 1998, appellant "was beginning to have serious problems driving due to lower-extremity weakness and sensory loss, as her attorney and physician predicted in their letters...." "These problems" affected her ability to conduct field visits for ALS. She told her supervisor "of the safety

concerns for herself and others" and requested "reassignment or the restructuring of her job duties to lessen her field work responsibilities." Appellant's request for this accommodation was forwarded to Unger, "who had the authority to grant an accommodation." But, as appellant points out in her complaint, "a year and a half would pass before [the County] would accommodate" her.

The next month Unger requested a letter from appellant, listing which duties she could perform in her Assisted Living Services job. In a letter dated November 27, 1999, appellant responded by stating: "[T]he only aspect of my job that is increasingly difficult for me to perform is physically driving myself to visits." Two months after receiving that letter, in January 1999, Unger requested a letter from appellant's physician confirming her inability to drive. Responding to Unger's request, appellant's physician, in a letter, dated January 15, 1999, explained that " 'increased fatigability as well as weakness of upper and lower extremities'. . . made it 'impossible' for [appellant] to drive. . . ."

Still unable to obtain an accommodation from the County, appellant retained private counsel to assist her. But that did not produce the results she had hoped for. For then "the efforts by [appellant] and her attorney were blocked" by John Kenney, the chief of the County's Aging and Disability Services. According to appellant, Kenney "delayed and prevented [her] from obtaining a reasonable accommodation by using a mistake by a union staff attorney as a pretext to avoid negotiating an accommodation."

That mistake was made by Mary Kay Canarte, a union staff attorney. On February 11, 1999, Canarte wrote to appellant regarding appellant's decision to retain outside counsel. In that letter, Canarte informed appellant that she could help her file a grievance with respect to the denial of her request for a reasonable accommodation but she could not "negotiate with outside counsel in this regard due to the potential conflict of interest." Canarte advised appellant to "continue to apply for positions 'at or below the grade you hold' " and further stated

that "the County's disability manager, Brenda Williams, could 'assist [appellant] in this regard.' "

But, ultimately, appellant's counsel learned that Canarte had misinterpreted the collective bargaining agreement and that the collective bargaining agreement did not prevent the union's counsel from meeting with an employee's private counsel to discuss an accommodation. Consequently, in a letter dated February 23, 1999, appellant's counsel informed Kenney that the collective bargaining agreement did not forbid " 'direct communication between management and an employee (and an employee's chosen counsel) in an effort to resolve an issue informally.' " But attempts by appellant's counsel to arrange a meeting with Kenney to discuss a reasonable accommodation proved unsuccessful.

In March 1999, as Canarte had suggested, appellant contacted Brenda Williams in the County's Occupational Medical Services Management Program for assistance. After appellant described her physical limitations, Williams, according to appellant, agreed with her proposal that her part-time Group Home Licensing position be turned into a full-time position.

On March 3, 1999, the union's outside general counsel wrote a letter to appellant advising her that she could either pursue her rights under the statute or under the contract's grievance procedure, and stating: " 'As long as the working conditions of [appellant] are affected, via your representation, in ways which do not violate the MCGEO collective bargaining agreement, the union has no objection to your representation.' " He added, " '[n]either do we have any desire to be included in your discussions with the County.' " That day, appellant's counsel sent a copy of that letter to Kenney and again requested a meeting to discuss a reasonable accommodation.

Nonetheless, the next day, Kenney informed appellant's counsel that he had not returned his calls because "he thought the union was exercising its right to represent [her]" and concluded: " '[T]herefore ... I cannot meet with you without the Union being present.' " Kenney also said "that the County was already doing 'everything possible to make an accom-

modation for [appellant]' so a 'meeting with you to make that happen is really not necessary, . . . .' "

On March 22, 1999, appellant learned that she was to submit to another "fitness for duty evaluation" by Dr. Flynn. Following that examination, Dr. Flynn reported that appellant " 'does meet the criteria eligibility of the Americans With Disabilities Act' " . . . [and] 'that there is a medical necessity for the requested accommodations of job restructuring and or job re-assignment.' "

On April 14, 1999, six months after appellant had requested an accommodation, appellant and her counsel finally met with Williams, Anderson, and Anne Windle, an assistant county attorney, to discuss appellant's difficulties with her job. Appellant clarified that, in addition to having difficulty driving, she was also unable "to write for prolonged periods of time." Williams described the "alternative options she had discussed with [appellant], including converting [appellant's] part-time job with Group Home Licensing into a full-time job." But Windle "incorrectly" informed them "that under the EEOC regulations, accommodations are decided by the employer and the employee has to accept whatever is offered." Her request to either modify or replace her part-time job was denied. Instead, the County told her "to use County vouchers from a 'Call and Ride' program to use taxi cabs to take her to home visits and to continue her field work as a 'temporary' solution."

Not only did the County's "temporary solution" not accommodate appellant's disability, it actually exacerbated it. For the next ten months, in "cold winter months" and "hot summer months," appellant did as she was told and used taxi cabs to conduct her field work. Frequently having to wait an hour or two for the cabs to arrive, appellant endured "additional physical hardship," which compounded her fatigue. Even though she notified her supervisor of the problem and explained that the "temporary solution" was making things worse, no change was made in her duties for almost a year.

In April 1999, the same month the County provided the "temporary solution," appellant learned of a supervisory posi-

tion, requiring minimal field visits, in the Information and Assistance Unit ("IAU"). But when she inquired about the position, she was told it would be advertised in July. In late June, appellant learned that the position had been filled before it was ever advertised. At that time, appellant's supervisor suggested that "she seriously consider giving up full-time employment and only continue with the half-day Group Home Licensing job."

Almost a year had passed and appellant was still, according to her complaint, without a reasonable accommodation. Consequently, on September 13, 1999, appellant filed an administrative complaint with the Montgomery County Human Relations Commission ("the Commission"). About a week later, appellant learned from a co-worker that she was being transferred to a different position in the Information and Assistance Unit. After expressing concern to her supervisor about the suitability of the transfer, she was told that a meeting would be held later that month.

On October 12, 1999, appellant and her counsel again met with Kenney, Anderson, and Windle to discuss appellant's transfer to IAU. Having previously worked in that unit, appellant was familiar with what the job entailed and felt that the position was unsuitable because it required "extensive writing and computer entry and she was suffering from weakness in her arms in addition to the weakness in her legs."[1] In addition, appellant's counsel repeatedly stressed that the County was legally obligated "to discuss what job an employee with a disability is able to perform in a two-way dialogue with that employee, in order to determine how to reasonably accommodate the employee's disability."

After that meeting, in a memorandum to the County, appellant reiterated her concern that the IAU position would not accommodate her special needs. She did express, however, a

---

1.  Appellant alleged in her complaint that this was not the first time the County had been notified of her upper body weakness and that she had notified them by letter dated August 7, 1998, and again at the previous meeting in April 1999.

willingness to discuss the situation further with Unger or any appropriate person. Two additional meetings followed but no resolution was reached.

Then, on November 8, 1999, in a memorandum to Dr. Flynn, Unger suggested that appellant's condition had changed and requested that Dr. Flynn conduct another "fitness for duty evaluation" and make a recommendation on appellant's " 'ability to perform the essential functions of a Social Worker III.' " Appellant sent an email to Kenney informing him that she found the memorandum to Dr. Flynn to be "one-sided" and that the County had been " 'consistently hostile' " to every attempt she had made to obtain a reasonable accommodation. Kenney responded that the examination was scheduled for November 17th and that it "was needed," he explained, " 'to determine your ability to perform the duties of the proposed position [in IAU] and make the specific accommodations that you will need in order for you to be successful in this new position.' " In an email, appellant informed Kenney that the medical examination was the County's attempt to "cover-up for its delay and refusal to act." She did not show up for the scheduled examination. On November 22, appellant's treating physician sent a letter to the County "reiterating [appellant's] continued need for accommodations and stressing that [appellant] was able to perform her work if given an appropriate accommodation."

On December 7, 1999, Windle, the assistant county attorney, advised appellant's counsel that by not submitting to the medical examination, appellant could be fired for insubordination. Windle explained that appellant's difficulty in writing was the change in condition justifying the examination. But appellant's counsel responded that there was no significant change in appellant's disability. Unger sent the letters from appellant and her physician to Dr. Flynn and asked if he could assess her fitness for duty without another examination. He could not. Kenney sent an email to appellant directing her to "attend a new appointment with Dr. Flynn on December 29." Appellant responded that "because of 'the threats of termination or disciplinary action' " in Windle's letter, she "felt

forced to keep her appointment with Dr. Flynn." On December 29, 1999, appellant submitted to another "fitness for duty evaluation" by Dr. Flynn. Following that examination, Dr. Flynn concluded that appellant could not perform the duties of the position in IAU and he "supported her request that her half-time Group Home Licensing position, which did not require field work, be converted into a full-time job." Finally, on February 22, 2000, appellant was told that she could perform her half-time Group Home Licensing position on a full-time basis.

Appellant nonetheless continued to press her claim before the Commission. The parties "engaged in conciliation using Commission-appointed mediators, but were unable to reach an agreement." On August 28, 2001, appellant filed a complaint in the Circuit Court for Montgomery County alleging disability discrimination by the Montgomery County Department of Health and Human Services, John Kenney and Judith Unger. The complaint contained two counts: the first alleged a violation of § 27–9 of the Montgomery County Code and the second a violation of § 42 of Article 49B of the Maryland Code Annotated. The complaint requested that the circuit court:

72. Declare that [the County's] action and inaction with regard to [appellant] violates Article 49B of the Annotated Code of Maryland, and Chapter 27, Article 1 of the Montgomery County Code.

73. Enjoin [the County] from continuing to violate Maryland Code Article 49B and Chapter 27, Article 1 of the Montgomery County Code, and prohibit them from refusing to provide reasonable accommodations to persons with disabilities, including causing an unreasonable delay in providing such accommodations.

74. Order [the County] to participate in a flexible, interactive and cooperative consultation with persons with disabilities, such as [appellant], when determining reasonable accommodations as required by the [EEOC] regulations, which are followed by Montgomery County.

75. Grant [appellant] damages, including punitive damages, attorneys' fees and costs, and any other relief the Court deems just, equitable and appropriate.

In response, the County filed a motion to dismiss, claiming that appellant's complaint failed to state a claim upon which relief could be granted because the issue was now moot: appellant had received the requested accommodation. The circuit court granted that motion, holding that the case against the County was moot and that there was no basis for a case against either Kenney or Unger. This appeal followed.

## I.

Appellant contends that the circuit court erred in dismissing her complaint for failing to state a claim upon which relief can be granted. The County's seventeen month delay in granting her an accommodation, she claims, was unreasonable and therefore constitutes disability discrimination in violation of county and state law. That issue, she asserts, should not have been resolved by the circuit court on a motion to dismiss. We agree.

"The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action." *Hrehorovich v. Harbor Hosp. Ctr.*, 93 Md. App. 772, 785, 614 A.2d 1021 (1992). Conversely, if a complaint sets forth a legally sufficient cause of action, dismissal of that complaint would be error. And that is what occurred here. The complaint at issue alleges a legally sufficient cause of action for disability discrimination in violation of Article 49B of the Maryland Code (1974, 1998 Repl.Vol. & 2002 Supp.) ("Article 49B") and Chapter 27 of the Montgomery County Code (1994 & 2002 Supp.)(" § 27"). Article 49B, § 42 authorizes a civil action for damages or other relief in Montgomery County by "a person who is subjected to an act of discrimination prohibited by the county code...." Disability discrimination, as alleged here, is prohibited by § 27–19 of the Montgomery County Code. That section provides:

(a) A person must not because of the race, color, religious creed, ancestry, national origin, age, sex, marital status, sexual orientation, or genetic status of any individual or disability of a qualified individual, or because of any reason that would not have been asserted but for the race, color, ... disability ...:

(1) For an employer:

(A) fail or refuse ... to accept the services of, discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment; ...

A "disability" is defined in § 27-6(c) as "a physical or mental impairment that substantially limits one or more of an individual's major life activities ...;" a "qualified individual" is defined in § 27-6(u) as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or seeks;" and a "reasonable accommodation" is defined in § 27-6(aa) as

any modifications necessary to make an environment suitable for a disabled person, without undue hardship or significant risk to any person's health or safety. Reasonable accommodation in employment includes:

(1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(2) job restructuring, part-time or modified work schedules, reassignment to a vacant position, ... and other similar accommodations for individuals with disabilities.

Although the Montgomery County Code does not expressly say so, it clearly implies that the denial of a reasonable accommodation to an otherwise qualified employee would constitute disability discrimination. For it expressly prohibits discharging a qualified individual with a disability, who, with a reasonable accommodation, "can perform the essential functions of the employment position that the individual holds or seeks." §§ 27-6(u), 27-19. Moreover, the Code states that

"[t]he prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law." § 27–1.[2] And the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101, et seq., (1997 & 2002 Supp.) upon which the County act is modeled, expressly states that the failure of an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee ...." is a form of disability discrimination. 42 U.S.C. 12112(b)(5)(A).

■ We turn now to appellant's contention that her complaint is not moot. "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Attorney General v. Anne Arundel County Sch. Bus Contractors Ass'n.*, 286 Md. 324, 327, 407 A.2d 749 (1979). *See also Coburn v. Coburn*, 342 Md. 244, 250, 674 A.2d 951 (1996); *Adkins v. State*, 324 Md. 641, 646, 598 A.2d 194 (1991); *Stevenson v. Lanham*, 127 Md.App. 597, 612, 736 A.2d 363 (1999). When that occurs, the general rule is that case will be dismissed without consideration of its merits. *Coburn*, 342 Md. at 250, 674 A.2d 951.

■ To determine whether appellant's complaint is moot, we must ascertain whether it contains a legally sufficient cause of action for disability discrimination. Under the ADA, as noted, the failure of an employer to make a "reasonable accommodation" constitutes disability discrimination. 42 U.S.C. 12112(B)(5)(A). To establish a prima facie case for disability discrimination under the ADA based on an employ-

---

2. Section 27–1 provides:
   The prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law. The intent is to assure that a complaint filed under this article may proceed more promptly than possible under either federal or state law. It is not County policy, however, to create a duplicative or cumulative process to those existing under similar or identical state or federal laws.

er's failure to provide a reasonable accommodation, the employee must show:

> (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation.

*Lyons v. Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir.1995).

There is no question here that appellant satisfies at least the first three elements. First, the County is an employer that is subject to Article 49B and § 27–19.[3] Second, appellant suffers from the disabling affects of multiple sclerosis and is therefore an individual with a disability. And third, appellant could perform the essential functions of her job, as she passed three separate "fitness for duty examinations" performed by the County's medical examiner, Dr. Flynn. In October 1998, after examining appellant, Dr. Flynn concluded that appellant "was fit for duty as a Social Worker III with some restrictions." Then again, in March 1999, Dr. Flynn concluded that appellant met " 'the criteria eligibility of the Americans with Disabilities Act.' [and found] 'that there is a medical necessity for the requested accommodations of job restructuring and or job re-assignment.' " And then in December 1999, when asked by Unger to determine whether appellant could " 'perform the essential functions of a Social Worker III,' " Dr. Flynn, in the words of the complaint, "supported" appellant's request that her half-time Group Home Licensing position be converted into a full-time position.

The only issue that remains is whether appellant has satisfied the fourth element of such a claim. That is to say, has appellant alleged sufficient facts from which it could be con-

---

**3.** "Employer" is defined in § 27–18(b) as:

any person, wherever situated, who employs more than six (6) employees within the county, ... or who recruits individuals within the county to apply for employment within the county or elsewhere....

cluded that the County, after receiving notice of appellant's disability, failed to provide her with a "reasonable" accommodation? The answer to that question turns on the meaning of "reasonable accommodation." As noted earlier, under § 27–6(aa), a reasonable accommodation in employment includes:

(1) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(2) job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities.

§ 27–6(aa).

But the issue before us is not the nature of the accommodation but its timeliness. In other words, is the timeliness of an accommodation a factor to be considered in determining its reasonableness? Although that question has not been addressed by our state appellate courts, there is a substantial body of federal decisional law that says it is. *See Krocka v. Riegler,* 958 F.Supp. 1333, 1342 (N.D.Ill.1997) (holding that "an unreasonable delay in implementing a 'reasonable accommodation' can constitute a discriminatory act," and although the employee was working his requested assignment at the time he filed a complaint, an eight-month delay in assigning him to a desired shift constituted such an act). *See also Groome Res. Ltd. v. Jefferson,* 234 F.3d 192, 200 (5th Cir.2000)(holding that "unjustified and indeterminate delay had the . . . effect of undermining anti-discriminatory purpose of the" Fair Housing Amendments Act); *Bryant Woods Inn, Inc. v. Howard County,* Md., 124 F.3d 597, 602 (4th Cir.1997)(holding that, under the Fair Housing Act, "a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings"); *Armstrong v. Reno,* 172 F.Supp.2d 11, 23 (D.D.C.2001)(holding that summary judgment was not appropriate where employer delayed over a year before providing plaintiff with an accommodation, because "whether plaintiff was accommodated at all is . . . a matter for a trier of

fact to determine"); *James v. Frank*, 772 F.Supp. 984, 992 (S.D.Ohio 1991)(holding that a seven-month delay in providing a disabled worker with a chair with arms and wheels, as an accommodation, was not reasonable).

In the instant case, the County did not make, according to the allegations in appellant's complaint, a timely effort to reasonably accommodate appellant: In October 1998, appellant requested "reassignment or the restructuring of her job duties to lessen her field work responsibilities." That request was denied and, as a "temporary solution," the County told her "to use County vouchers from a 'Call and Ride' program to use taxi cabs to take her to home visits and to continue her field work." Unfortunately, waiting for cabs, frequently for an hour or more, in hot and cold weather, only further taxed her diminishing store of energy, causing her greater hardship and exacerbating her condition. Although appellant complained to her supervisors, "[i]t was not until February 2000, 10 months later, that HHS finally accommodated [her] disability and she was ... relieved of this requirement to continue conducting field visits through the use of taxi cabs." That occurred only because, according to the complaint, the County at last granted her original request: that her part-time Group Home Licensing position be converted into a full-time position.

But before that happened, appellant, receiving no response from her supervisor to her complaint that the "temporary solution" of taking taxi cabs was not working, filed an administrative complaint. The County then tried to transfer her to a new position. This new position, unfortunately, involved extensive writing and computer entry, tasks which appellant could only perform with great difficulty. Finally, in February 2000, the County accepted appellant's suggested accommodation and converted her half-time Group Home Licensing position into a full-time position. This eliminated the need for appellant to conduct field visits and was what she had originally requested, seventeen months earlier.

The County contends that, because appellant ultimately received the accommodation she requested, no controversy

now exists between the parties and thus the circuit court correctly dismissed the complaint as moot. We disagree. Simply because appellant received the accommodation she requested does not make that accommodation, no matter how belated, a "reasonable accommodation." We therefore hold that appellant alleged in her complaint a cause of action for disability discrimination based on the County's purported failure to timely accommodate her disability. Our holding is consistent with existing case law and the policy underlying the federal, state, and county laws prohibiting such discrimination. Indeed, to hold otherwise would undermine the very purpose of such laws. Knowing that an accommodation could always be offered, if an employee persists in his or her request, an employer would have little incentive to make a timely accommodation. Dilatory tactics, in fact, would be rewarded not penalized as many disabled employees, seeing no progress, would undoubtedly drop their accommodation requests. And that would of course discourage others from making an accommodation request in the first place. Such a result is entirely inconsistent with the purpose and spirit of the county and state anti-discrimination laws and one which we cannot abide.

## II.

■ Appellant contends that the circuit court erred in dismissing her claims against John Kenney, chief of the County's Aging and Disability Services, and Judith Unger, administrator of the County's Human Resources Department. The court was apparently persuaded by the appellees' argument that "[t]here was no indication" in appellant's administrative complaint "what particular individuals committed ... particular acts against [appellant]."

In *Johnson v. Maryland*, 940 F.Supp. 873 (D.Md.1996), the United States District Court for the District of Maryland declared that "a civil action for employment discrimination may only be brought against the party named in the original administrative charges filed with the EEOC." *Id.* at 875. That is because, the court explained, "it notifies the charged party of the asserted violation ... [and] it brings the charged party

before the EEOC and permits effectuation of the [ADA's] primary goal, the securing of voluntary compliance with the law." *Id.* (quoting *Alvarado v. Bd. of Trs. of Montgomery Comty. Coll.*, 848 F.2d 457, 458–59 (4th Cir.1988)).

In this case, appellant filed an administrative complaint with the Montgomery County Human Relations Commission, alleging that she had been "discriminated against and denied reasonable accommodation because of a disability (spinal cord dysfunction)." She named John Kenney and Judith Unger as "Respondents" in her administrative complaint and explained who they were. We therefore conclude that, as *Johnson* requires, Unger and Kenney had notice of the administrative complaint that had been filed against them and that they were brought before the Commission.

The County contends that "[t]he circuit court properly dismissed [appellant's] claims against Kenney and Unger, however, because she failed to include specific allegations about these individuals in her [administrative] complaint." In support of that contention, the County relies on *Riley v. Technical & Management Services Corp.*, 872 F.Supp. 1454 (D.Md.1995). In that case, as the County notes, the United States District Court observed that "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge circumvents the EEOC's investigatory and conciliatory role." *Id.* at 1459.

But in Riley, unlike the case before us, the plaintiffs raised two causes of actions in the federal district court that were not raised in the administrative action. In their EEOC complaint, the plaintiffs alleged only discrimination based on their gender. *Id.* But later, in defending their judicial complaint against a defense motion for summary judgment, they claimed not only gender discrimination but sexual harassment, hostile work environment, and retaliation. *Id.* at 1459. Rejecting those newly-raised claims, the district court explained that it could "only exercise jurisdiction over claims encompassed within the EEOC charge and claims 'like or related to allegations contained in the charge, or which grow out of such

allegations.' " *Id.* (quoting *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992) (citations omitted)). In stark contrast to *Riley*, however, the only claim ever raised by appellant, in both forums, was one of disability discrimination, stemming from an unreasonable delay in granting a reasonable accommodation. It was the sole basis for both her judicial complaint and her administrative complaint. No additional claims were ever made.

As for the County's claim that appellant's administrative complaint lacked specificity as to the individual appellees, we note that most administrative claims are filed without legal assistance, as was anticipated when these administrative processes were created. We are loathe to require that such claims now meet judicial pleading standards, as that would defeat the very purpose of providing inexpensive and expeditious administrative procedures for handling such claims.

Although appellant's administrative complaint could have been more specific as to what each "Respondent" did to deny her a reasonable accommodation, it described at length the acts and omissions performed by the "Respondents" collectively that denied her an accommodation. Based on a fairly detailed recitation of circumstances surrounding that denial, it alleges that "Respondents" had "engaged in a pattern of inaction and delay" and that they had done so with the intent to violate her rights. Thus, appellant's administrative complaint preserved her claims against Unger and Kenney for judicial resolution. In short, we agree with appellant that, at this juncture, her claims against those two appellees should not have been dismissed.[4]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**

---

**4.** We do not decide today whether Kenney and Unger can be held individually liable, as a matter of law under the Montgomery County Code, for discriminatory acts they may have committed as HHS supervisors. That issue was not raised and therefore is not now before us.