**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 11-2093**

———————————

MICHELE FIELDS,

        Plaintiff - Appellant,

    v.

VERIZON SERVICES CORPORATION,

        Defendant - Appellee.

———————————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(8:10-cv-02484-AW)

———————————

Argued:  May 16, 2012               Decided:  August 9, 2012

———————————

Before NIEMEYER and KEENAN, Circuit Judges, and Robert J. CONRAD,
Jr., Chief United States District Judge for the Western District of
North Carolina, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** Susan Laiken Kruger, ALAN LESCHT AND ASSOCIATES, PC,
Washington, D.C., for Appellant.  Emmett F. McGee, Jr., JACKSON
LEWIS, LLP, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Alan
Lescht, ALAN LESCHT AND ASSOCIATES, PC, Washington, D.C., for
Appellant.  Clifton R. Gray, JACKSON LEWIS, LLP, Baltimore,
Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from the interaction of a company's efforts to evaluate employees and effect reductions in force ("RIFs") during a time period in which one employee, Plaintiff-Appellant Michele Fields ("Fields"), was diagnosed with, and subsequently received treatments for, breast cancer. On June 29, 2010, after she was the subject of a RIF, Fields filed suit in state court in Maryland, accusing Defendant-Appellee Verizon Services Corporation ("Verizon") of engaging in unlawful disability discrimination when it terminated her. Fields based her claim on Article 1, Section 27-19 of the Montgomery County Code.[1] The case was removed to the District Court of Maryland on September 9, 2010 pursuant to 28 U.S.C. §§ 1331, 1332 and 1441. The district court granted summary judgment for Verizon on September 13, 2011 and Fields timely filed her notice of appeal on October 10, 2011. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we affirm the judgment of the district court.

---

[1] Fields's complaint also alleged a claim for retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. Because she did not, in her opening briefs, present any argument on that claim, we conclude that she has waived any argument on the issue.

I.

Michele Fields worked for Verizon for twenty-seven years.[2] During that time, Verizon conducted annual evaluations by means of a "Year-End Performance Assessment." Verizon assigned one of four ratings to each of its employees: leading, performing, new or developing. "New" was used to indicate that an employee's achievement could not be evaluated due to his or her short tenure in the position. "Developing" indicated that improvement was needed.

In December 2008, Fields's Manager, Eva Drum ("Drum"), rated all of her team members as "performing" for the Year-End Performance Assessment and then ranked them. Drum ranked Fields as 4th out of 5 Senior Consultants on her team.[3]

---

[2] Fields worked as a Senior Consultant in Verizon's Requirements Group. The general function of the Requirements Group is to create documents used to generate technical designs and application codes that detail the behavior and functionality for the ordering and billing processes of Verizon's consumer and business products. In early 2009, the Requirements Group was comprised of nineteen Senior Consultants and Specialists and six Managers. Each of the Managers oversaw a team with a specific focus. Fields's Manager was Eva Drum and Drum's team oversaw the build-out of Verizon's Converged Front end Engine ("CoFEE") system, which is used by Verizon sales representatives to place orders, including Fiber Optic Service ("FiOS") orders, review bills and make adjustments. Another Requirements Group Manager, Joseph Borrelli, oversaw a team focused exclusively on FiOS-related projects.

[3] After the 5th ranked Senior Consultant was transferred in the June 2009 RIF, Fields became the lowest-ranked member of Drum's team.

In April 2009, months after Fields's low 2008 year-end rating, she was diagnosed with breast cancer. She underwent surgery, chemotherapy and radiation, causing her to be out of work full time for approximately four months and part time for an additional three months. Fields was finally healthy enough to return to work full time on November 23, 2009.

During this time period, Verizon executed two RIFs using employee rankings. The first RIF occurred in June 2009. At that time, everyone in the Requirements Group was assessed as "performing" or "leading," because any employees assessed as "developing" were terminated in previous RIFs. Drum declared that she did not take Fields's cancer into consideration in any way when she ranked Fields in June 2009, and confirmed that she used the same criteria for determining rankings for the December 2008 Year-End Performance Ratings as for the June 2009 RIF.

To facilitate the June 2009 RIF, the Requirements Group Managers participated in a conference call and discussed each of the nineteen Senior Consultants and Specialists in the Requirements Group, ranking them according to their subject matter expertise, business knowledge, and the types of projects each supported. Although Fields had been off work for almost two months, Drum never mentioned Fields's breast cancer or related absence during the call. In fact, Fields testified that she felt Drum was generally "supportive" during her treatment and recovery, and that she was "always treated fairly" by Drum. The Managers came up with a list

and in June 2009, Verizon terminated or transferred the four lowest-ranked employees–those ranked 16th through 19th.  Fields, ranked 13th, was not terminated in this RIF.

The second RIF occurred on November 24, 2009.  After becoming Director of the Requirements Group in September of that year (in addition to being Director of the Testing Group), Joseph Milla ("Milla") learned that there would be another RIF affecting both groups and requiring Milla to lay-off eleven employees.  As a result of being Director over the Testing Group for fourteen years, Milla had substantial insight into the skill sets and expertise of the group's employees.  Because he had only supervised the Requirements Group for one month, Milla asked the Requirements Group Managers to provide him with a list ranking the fifteen remaining Senior Consultants and Specialists in that group.

The Requirements Group Managers concluded that there was no need to change the list they generated for the June 2009 RIF because the subject matter expertise and skill sets of the employees had not significantly changed in the few months between June and October.  Therefore, the ranking list provided to Milla for the November 2009 RIF was identical to the list for the June 2009 RIF, except for the absence of the employees previously ranked 16th through 19th who were terminated or transferred in the June RIF.

Milla initially determined that the three lowest-ranked members of the Requirements Group would be selected for the November 2009 RIF–i.e. those ranked 13th through 15th.  Fields was ranked 13th,

5

Ernestine Garlick ("Garlick") was ranked 14th, and William Lesiak ("Lesiak") was ranked 15th. In addition, Milla selected eight employees from the Testing Group for termination pursuant to the RIF.

After his initial selection of eleven employees to be terminated, Milla learned that he could save two employees from losing their jobs. Milla felt it would be the most "fair" for him to retain one employee from the Testing Group and one from the Requirements Group. For the Requirements Group, Milla considered employees ranked 13th (Fields) and 14th (Garlick), both of whom worked in Maryland. Milla called Fields's and Garlick's Managers to ascertain who had the most relevant and valuable skill set and should be saved from the RIF.

Garlick's Manager Joseph Borrelli ("Borrelli") explained that Garlick's work was focused on projects directly concerning Verizon FiOS. Borrelli opined that FiOS was Verizon's premiere product and that it would be sensible to retain those Requirements Group employees, such as Garlick, who focused on and had expertise in FiOS-related projects.

Fields's Manager Drum explained that Fields's skill sets and subject matter expertise were focused on Verizon's CoFEE system. According to Milla, Drum was an "advocate" for Fields, explaining that Fields "was a performing employee" and that "she was valuable to the corporation." When Milla asked Drum about Fields's experience working on projects related to Verizon FiOS, however,

6

Drum conceded that Fields's FiOS experience was limited. Fields served as the primary lead on several projects that included FiOS products, but her team focused on projects related to the CoFEE system. Indeed, Fields testified that in 2008 and 2009, she spent nearly all of her time working on the build-out of the CoFEE system. Drum did not disclose Fields's breast cancer or related absence to Milla during this call, or at any other time.

In the end, Milla "agreed with Mr. Borrelli's assessment that Verizon FiOS was the premiere product of Verizon and the line of business expanding most rapidly, and that retaining an employee such as Ms. Garlick, who already had significant experience and expertise in working on Verizon-FiOS related projects, made the most sense for the Requirements Group from a strategic and business standpoint."

## II.

We review the district court's grant of summary judgment de novo, viewing the facts and inferences drawn therefrom in the light most favorable to the nonmoving party. See E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)). The "mere existence of some

7

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

III.

A.

Fields claims that she was unlawfully terminated by Verizon due to her disability in violation of Montgomery County Code ("MCC") Article 1, Section 27-19, which prohibits employers from discharging or otherwise discriminating against an individual on the basis of disability. See MCC, Art. 1, § 27-19. Section 27-6 of the MCC defines disability as "a physical or mental impairment that substantially limits one or more of an individual's major life activities, a record of having such an impairment, being associated with an individual with a disability or being regarded as having such an impairment . . . ." Id. at § 27-6.

The Montgomery County Code tracks the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), in all relevant respects and we accordingly look to ADA cases to analyze Fields's claim. See Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 254-55 (4th Cir. 2006); see also Cohen v. Montgomery Cnty. Dep't of Health & Human Servs., 817 A.2d 915, 922-25 (Md. Ct. Spec. App.

8

2003) (interpreting the disability discrimination provisions in the Montgomery County Code as congruent with the ADA); Ridgely v. Montgomery Cnty., 883 A.2d 182, 193 (Md. Ct. Spec. App. 2005) (looking to federal decisions interpreting the ADA for guidance in interpreting the MCC). But see MCC § 27-1 ("The prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law."). Fields did not submit any direct evidence of disability discrimination. Therefore, to survive summary judgment, Fields must establish a circumstantial case under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (holding that the McDonnell Douglas scheme of proof applies to claims brought under the ADA).

First, Fields must establish a prima facie case of wrongful termination. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If Fields "succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for Fields's termination. Id. at 253 (quoting McDonnell Douglas, 411 U.S. at 802). If Verizon carries this burden, Fields "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (citing McDonnell Douglas, 411 U.S. at 804);

9

see also Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

The district court found that Fields failed to establish a prima facie case of discrimination under Mitchell v. Data Gen. Corp., 12 F.3d 1310 (4th Cir. 1993),[4] because (1) "Fields was not an individual with a disability as defined by the MCC at the time her employment was terminated in November 2009," and (2) "the employees retained by Verizon were not performing at a lower level than Fields." Fields v. Verizon Servs. Corp., No. 10-cv-02484-AW, 2011 WL 4102087, at *5, 7 (D. Md. Sept. 13, 2011). "Even if Fields had established a prima facie case," the district court went on to hold, "Verizon has presented legitimate, non-discriminatory reasons for terminating Fields pursuant to the RIF: Fields'[s] lack of direct,

---

[4] The parties argued the prima facie test set forth in Mitchell, which states that "the plaintiff must show that (1) he was in the protected age group; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) following the discharge, he was replaced by an individual of comparable qualifications outside the protected class." 12 F.3d at 1315 (age discrimination). This Court, however, has noted its preference for using the test enunciated in Ennis in the ADA context, which requires the plaintiff to show that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. See Ennis, 53 F.3d at 58-59; see also Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001). Despite the fact that the district court used a different prima facie test, the pretext analysis is the same under either standard and precludes Fields from relief.

significant requirements experience working on FiOS-related projects." Id. at *7. Finally, the district court found that Fields did not present "any evidence to show that Verizon's legitimate, non-discriminatory reasons were pretextual." Id. Because we agree that Fields failed to meet her burden of establishing that Verizon's stated reason was actually a pretext for unlawful discrimination, McDonnell Douglas, 411 U.S. at 804, we hold that the district court properly granted summary judgment in favor of Verizon.

### B.

Assuming *arguendo* that Fields established a prima facie case of discriminatory termination, Verizon articulated a legitimate, nondiscriminatory reason for Fields's termination: Fields's relative lack of experience in the area most relevant to Verizon at the time of the November 2009 RIF. See (J.A. 130-31); Duke v. Uniroyal Inc., 928 F.2d 1413, 1418 (4th Cir. 1991) (age discrimination) ("When the [RIF] selection process is based on performance, the criterion is more a question of relevant performance than one of not meeting employer expectations."). In 2009, Verizon viewed FiOS as the strategic focus of the company.[5] (J.A. 130-31). Verizon retained Garlick over Fields because Garlick had direct, significant requirements experience working on FiOS-related projects. (J.A.

---

[5] Fields even agreed that FiOS was the "primary strategic product" for Verizon and that Verizon was putting a greater emphasis on the FiOS product than its other existing products. (J.A. 35-36).

11

117-18). Garlick's group worked exclusively on FiOS-related projects and, accordingly, all of the members of her group were protected from the RIF. (J.A. 117-18; 120-21). In contrast, Fields's team focused on the CoFEE system and while Fields had some experience working with FiOS in varying degrees, she admitted that she never worked on any projects exclusively focused on FiOS. (J.A. 25, 31, 34).

Selecting an employee for termination pursuant to a RIF because she does not have sufficient experience in the area most important to the present and future needs of the company is a legitimate, nondiscriminatory reason for termination. See Duke, 928 F.2d at 1418 (describing as legitimate and nondiscriminatory the stated reason of discharging plaintiffs pursuant to a RIF because plaintiffs "were the least qualified for the existing and future needs of [defendant employer]"). In Mereish v. Walker, 359 F.3d 330, 335 (4th Cir. 2004), the defendant employer, United States Army Medical Research Institute for Infectious Diseases ("USAMRIID"), terminated the plaintiffs pursuant to a RIF. USAMRIID's stated reason for their termination was "to ensure that the technical skills possessed by the USAMRIID employees after the RIF would match the changing nature of the threats to which the agency was designed to respond–namely, biological war and terrorism." Id. This Court found that "[s]uch a strategic business decision constitutes a legally sufficient justification for appellants' termination." Id. Verizon's stated reason that it terminated Fields because of her

relative lack of FiOS experience constitutes a legitimate, nondiscriminatory reason for Fields's termination. The burden shifts to Fields to offer evidence that the articulated reason for her termination is pretextual.

## C.

Fields argues that Verizon's stated reason for her termination was a pretext for discrimination. (Doc. No. 17 at 28). First, Fields argues that her higher ranking is proof that she was performing better than Garlick, and that Drum and Milla illegally took her cancer into consideration when selecting her for termination. (Id. at 28-29). According to Fields, Milla's explanation that Fields did not have as much FiOS experience was only a cover for the actual reason she was selected for the RIF–her cancer and related absence. (Id. at 28-31). Second, and in direct conflict with her first argument, Fields attacks the ranking system as unfair, subjective and artificial. (Id. at 29-30). This argument undermines the only evidence that Fields presented of discrimination–her termination despite her slightly higher rank.

## 1.

## a.

Fields contends that Drum illegally took her cancer and related absence into account when she evaluated and ranked Fields. (Doc. No. 17 at 30). Fields states that she "served as the primary lead on several projects that included FiOS products," (J.A. 143), and that she worked with FiOS when she traveled to call centers to

13

support the launch of new FiOS projects. (J.A. 144). Fields argues that Drum's awareness of her work on FiOS-related projects and visits to call centers should have led her to rank Fields higher than she did. (Doc. No. 17 at 30). Because her rank was the direct result of Drum's input, Fields concludes that Drum must have been motivated by her awareness of Fields's cancer and frustration over her absence when she ranked her so low. See (id.).

Fields's pretext argument related to Drum is rebutted by the evidence presented by both Fields and Verizon. First, Fields undercuts her own argument by offering significant evidence that Drum did not hold any discriminatory animus toward her. Fields testified that Drum was "supportive" during her treatment and recovery, (J.A. 39), that she was "always treated fairly" by Drum, (J.A. 37), and that Drum never did or said anything to her to suggest that Drum held Fields's cancer or prolonged absence against her, (J.A. 40).

Second, Verizon offered evidence that Drum did not take Fields's cancer or related absence into consideration when ranking Fields. Drum testified that she never mentioned anything about Fields having breast cancer during her conference calls with other Managers in the Requirements Group. (J.A. 219, 221). Drum also declared that she did not take Fields's cancer into consideration in any way when she evaluated and ranked Fields.[6] (Id.). Finally,

---

[6] Other than offering her own opinion and speculation, Fields did not present any evidence to discredit Drum's testimony as

14

Drum ranked Fields 4th out of 5 Senior Consultants on her team in December 2008–months before Fields was even diagnosed with breast cancer. (J.A. 220). After the 5th-ranked person was terminated in the June 2009 RIF, Fields became the lowest ranked member on her team. The consistency in Fields's low ranking is further proof that Drum did not take Fields's cancer into consideration when ranking her.

### b.

Fields argues that Milla lied in his deposition and that his dishonesty is evidence of pretext. (Doc. No. 17 at 28). Fields contends that Milla was dishonest when he stated that (1) he did not know Fields had cancer, and (2) a lack of FiOS-related experience was the reason for her termination. (Doc. No. 17 at 28). This is an accusation lacking evidentiary support. Fields did not offer any evidence that Milla knew of Fields's cancer or treatment.[7] When

---

unreliable. See Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (finding unsupported speculation insufficient to create a genuine issue of material fact); Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988) ("Conclusory assertions that [defendant's] state of mind and motivation are in dispute are not enough to withstand summary judgment.") (citing Zoby v. American Fidelity Co., 242 F.2d 76, 80 (4th Cir. 1957) (a "bare contention that the issue is disputable will not suffice" to resist a motion for summary judgment)).

[7] Fields claims that she "proved Milla–the final decision maker of the RIF–was aware of Fields's disability and that she was taking significant time off from work." (Id.). Milla testified that he knew that Fields had some kind of illness, but not that she had breast cancer or was on short term disability. (J.A. 107). Fields presented evidence that Milla received daily emails stating "Fields-STD." (J.A. 343, 345). These emails reported absences for every employee who worked under Milla and standing alone do not

15

Milla was given the opportunity to save two employees from the RIF, he decided to pick one from the Requirements Group and one from the Testing Group. (J.A. 120, 129). He called the Managers of the two highest ranked employees selected for the RIF-Fields and Garlick-to ascertain who had the most relevant and valuable skill set. (J.A. 130). Through these calls, Milla learned that Garlick was more skilled than Fields in FiOS. Because Milla regarded FiOS as the more relevant and important skill set for the future of the company, Milla selected Garlick as the employee to be saved from the RIF. Fields herself testified that FiOS was the "primary strategic product" for Verizon and that Verizon was putting a greater emphasis on the FiOS product than its other existing products. (J.A. 35-36).

So long as this decision to investigate beyond the bare face of the first RIF's rankings was not based on Fields's cancer, this Court will refrain from second-guessing Milla's decision. See Rowe v. Marley, Co., 233 F.3d 825, 831 (4th Cir. 2005) (holding an employer's decision to discharge one employee over another is the type of decision this court is reluctant to second guess); Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005); Henson v. Liggett Grp., Inc., 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including

show that he lied about knowing Fields was on short term disability. See Price v. Thompson, 380 F.3d 209, 214 n.1 (4th Cir. 2004) (finding that while a lie may be evidence of pretext, a mistake of fact is not).

workplace reorganization, as long as the employer does not violate the ADEA."); E.E.O.C v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992) ("It is not . . . the function of this court to second guess the wisdom of business decisions."); DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (A federal court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . . Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (quotations and citations omitted). Milla worked in a different state, and did not know anything about Fields's or Garlick's skills or qualifications when he decided to call their Managers. (J.A. 130). There is no evidence that Milla's decision to personally research Fields's and Garlick's qualifications was based on discrimination. (J.A. 131).

2.

Fields's attempt to show pretext by arguing that Verizon's ranking system was unfair, subjective and artificial also fails. To facilitate the selection process for the June 2009 RIF, Verizon's Requirements Group Managers ranked their members according to subject matter expertise, business knowledge, and the types of

17

projects each employee worked on.  (J.A. 218-19).  This Circuit has previously approved similar criteria as valid, nondiscriminatory measures of employee performance.  See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d at 257, 267 (approving of ranking system examining job expectations, quality and quantity of work, position scope, support to achieving commitments, feedback from others, awards and recognition, and performance standards).  While Verizon's objective factors were, to some extent, subjectively employed, "the mere fact that subjective criteria are involved in the reason articulated by an employer does not prevent according it sufficient rebuttal weight to dispel the inference of discrimination . . . ."  Page v. Bolger, 645 F.2d 227, 230 (4th Cir. 1981).  Verizon's ranking system appears to be, for the most part, objective and to the extent subjective criteria were used, their application in the present case appears to be consistent and even-handed.  Given the consistency of the results and the objective criteria used to evaluate the Requirements Group employees, the Court does not find any reason to discredit the application of Verizon's ranking system to the present decision involving Fields.  See Page, 645 F.2d at 230 ("[I]t must be possible for employers legally to make employment decisions that disfavor

18

qualified minority employees on the basis of comparative evaluation of their qualifications with those of other applicants.").

Fields's disagreement with her low rank is insufficient to discredit Verizon's ratings system or stated reason for firing her. Fields argument that her inability to attend work hobbled her ranking is also unsubstantiated. The only support Fields offers for the claim that her ranking and eventual termination were influenced by her illness-related absence is her statement, "I feel like they ranked me low because I was out." (J.A. 41). Fields's "own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989); see also Evans, 80 F.3d at 960 (explaining that "[plaintiff's] unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail to disprove [defendant employer's] explanation or show discrimination"). Fields's supposition is also refuted by the record. Fields's ranking at the time of the November 2009 RIF was consistent with her ranking prior to, and therefore, unaffected by, her April 2009 cancer diagnosis and subsequent absence. Drum did not share Fields's health condition or leave of absence with the other Managers during the conference calls for either the June 2009 RIF or the November 2009 RIF. (J.A. 99, 219-21). A discharged employee cannot attack an employer's ratings system that is objective and facially fair merely

19

because she differs with the result. See Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 235 (4th Cir. 1991) ("The system . . . used was objective and facially fair, even if it, like all human endeavors, was imperfectly administered."). Fields has not proffered any evidence that the ranking process or her termination were based on any discriminatory animus.

## IV.

Even though we assume *arguendo* that Fields established a prima facie case, her suit must be dismissed. Verizon put forward evidence that Fields's relative lack of direct and extensive FiOS-related experience led to removal from her Senior Consultant position. The district court held that this was a legitimate, nondiscriminatory reason for Fields's termination, and we agree. See Fields, 2011 WL 4102087, at *3. Fields failed to meet her burden of presenting evidence "that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285; see also Ennis, 53 F.3d at 58 ("the plaintiff bears the ultimate burden of proving that she has been the victim of intentional discrimination"); St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2746-49 (1993) (summary judgment is appropriate unless plaintiff presents adequate evidence that employer unlawfully discriminated). The district court's decision granting summary judgment in favor of Verizon is affirmed.

AFFIRMED

20